# BENZIGER v. UNITED STATES.

## CERTIORARI TO THE UNITED STATES CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 54. Argued December 10, 11, 1903.—Decided January 4, 1904.

Paragraph 649 of the Tariff Act of 1897, providing for the free entry of " casts of sculpture when specially imported in good faith for the use and by the order of any society incorporated or established solely for religious [or other specified] purposes, should be liberally construed, and any fair doubts as to its true construction should be resolved by the courts, in favor of the importer. Figures known and correctly described as " casts of sculpture," imported in accordance with this provision of the statute, held to be entitled to free entry thereunder notwithstanding the fact that similar articles were described by certain manufacturers in trade catalogues as statuary or composition statues.

CERTAIN figures representing various saints, and also two figures of adoring angels, as specified in the collector's letter to the board of general appraisers, were, in March, 1899, spe-

cially imported into the port of New York in good faith, for the use and by the order of societies incorporated or established solely for religious purposes. The importers claimed the figures were entitled to free entry under paragraph 649 of the tariff act of 1897. 30 Stat. 151, 201. The appraiser returned them as "church statues, composed of plaster of Paris, decorated," or as "articles and wares composed wholly or in chief value of earthy or mineral substances, not specially provided for," and the collector assessed upon them a duty of 45 and 35 per cent *ad valorem* under paragraphs 97 and 450 of the same act (pages 156, 193). If dutiable, no question is made as to the correctness of the decision of the collector in assessing the duties as he did. The contention is that these figures were "specially provided for" in this act under the paragraph above mentioned, 649.

The importers protested against the decision of the collector and the case went to the board of general appraisers. Testimony was taken by the board and it found as a fact the manner in which the figures were made, which was as follows:

"The clay model of the subject, of desired size, is covered by a workman with a coating some two inches thick of plaster of Paris. When this coating has 'set' or hardened sufficiently, the clay figure inside is broken up and removed, and a plaster of Paris mould thereof thus obtained. Plaster is then carefully forced into this mould, and when dry is taken out in the form of the original clay figure. This plaster figure, after having been carefully gone over by an artist or skilled workman to cure any defects in the moulding, is in turn thoroughly covered with specially prepared plaster for the final mould. This is made in sections, which when dry are removed, and together form a perfect mould, and this composite mould becomes the manufacturer's substitute for the artist's clay or plaster cast model from which he (the manufacturer) produces ⅼis moulded statues in unlimited numbers. In the moulding process the several sections of the mould are in turn laid with the concave side upward, and have a lining of 'carton pierre,'

one-half inch or more in thickness, carefully laid and pressed into them by the moulder's hands with the aid of suitable tools. The extended arms, fingers and other slender parts are strengthened by pieces of iron wire laid in the 'carton pierre,' which is then lined either with heavy paper or coarse woven vegetable fiber cloth secured with glue. After the 'carton pierre' has dried sufficiently, the several sections of the mould are removed and their contents joined together around a framework of wood, and a figure is thus formed, the counterpart of the original model. The statue then goes to a skilled workman called a 'finisher,' who, with knife or other instrument, removes any roughness resulting from the joining of the sections, cures any other defects in the moulding, and smooths it down generally. It is then passed to the painter and decorator, who completes it in the style desired. The statues in 'carton romain' and in 'stone composition' are made in the same manner, except that the latter are uniformly lined with coarse cloth. The stations of the cross in 'carton pierre' and in terra cotta are produced in substantially the same way (those in terra cotta, however, being kiln dried or baked after moulding), and are painted and decorated in quite the same manner as the statues, the foreground and other landscape or perspective effects being painted in suitable tints or hues."

The protest was overruled by the board, and a petition for a review was duly filed by the importers (petitioners) and the case heard in the Circuit Court, Southern District of New York, and that court affirmed the decision of the board. 107 Fed. Rep. 257. An appeal was taken to the Circuit Court of Appeals, where the decision of the Circuit Court was affirmed on the opinion of the court below. Upon petition of the importers a writ of certiorari was issued from this court and the case brought here for review.

*Mr. W. Wickham Smith*, with whom *Mr. Charles Curie* was on the brief, for petitioners:

The testimony upon which the board of appraisers appar-

ently based the finding that these articles were known in commerce as statuary or church statuary is not sufficient upon which to establish a commercial designation. *Maddock* v. *Magone,* 152 U. S. 368; *Sonn* v. *Magone,* 159 U. S. 417.

It is, however, of no consequence how these articles are specifically known in commerce, there being no provision in the law for church statuary, or for any cast statuary at all, and if they are casts of sculpture within the meaning of the law, it is of no consequence whether they have or have not been known as church statuary.

The finding that these articles have been known in art as church statuary is based on no evidence whatever.

The importers rely in this case on the well established principle of law repeatedly applied to the construction of statutes, and particularly to revenue statutes, and recognized by this court and the subordinate Federal courts in a multitude of decisions, that where language used in a former tariff act has received a uniform and consistent interpretation by the department of the Government charged with the execution of the law (in this case the Treasury Department) and Congress in framing new legislation repeats the language of the prior act, it will, in the absence of some more controlling consideration, be presumed to have used the language in the meaning and charged with the construction which has been given to it by the executive department. *Schell* v. *Fauche,* 138 U. S. 572; *Robertson* v. *Bradbury,* 132 U. S. 493; *Robertson* v. *Downing,* 127 U. S. 613; *United States* v. *Dean Linseed Oil Co.,* 87 Fed. Rep. 456; *Anglo-California Bank* v. *Sec'y of the Treasury,* 76 Fed Rep. 750; *United States* v. *Wotten,* 50 Fed. Rep. 694; *United States* v. *Johnston,* 134 U. S. 236; *Bate Refg. Co.* v. *Sulzburger,* 157 U. S. 1; *United States* v. *Hill,* 120 U. S. 169; *United States* v. *Philbrick,* 120 U. S. 52; *Butterworth* v. *United States,* 112 U. S. 67; *Five per cent. cases,* 110 U. S. 484; *Hahn* v. *United States,* 107 U. S. 406; S. S. 7274, December 22, 1885, S. S. 11747, 1891.

Casts imported for educational societies have been free since

1816, those for churches 1861 to 1870 and from 1883 to the present time.

The policy of according free admission to articles imported for churches is one which should be approved by the courts, and the tendency of judicial decisions should be to give such provisions a liberal interpretation, and not restrict their application by imposing qualifications and limitations which Congress, after having had its attention called to the matter, has seen fit not to impose.

*Mr. Assistant Attorney General McReynolds* for the United States:

For definition of statue, cast, sculpture, see Century, Standard and Webster's International Dictionaries. The provisions in the former tariff statues have been construed in S. S. No. 5549; No. 7274; No. 11747; No. 13936. See also *Tutton* v. *Viti,* 108 U. S. 312; *Merritt* v. *Tiffany,* 132 U. S. 167. Congress must be understood to use the word in its known commercial sense. *200 Chests of Tea,* 9 Wheat. 430; *Lutz* v. *Magone,* 153 U. S. 107; *United States* v. *Buffalo Gas Fuel Co.,* 172 U. S. 341.

MR. JUSTICE PECKHAM, after making the foregoing statement of facts, delivered the opinion of the court.

The petitioners claim that the figures in question here are entitled to free entry under the provision of paragraph 649 of the tariff act of 1897, 30 Stat. 151, 201, as being "casts of sculpture, where specially imported in good faith for the use and by the order of any society incorporated, or established solely for religious, philosophical, scientific, educational or literary purposes," etc. The board of appraisers thought that on July 24, 1897, the day of the passage of the tariff act, and for many years prior thereto, those figures belonged to a class which was known in commerce, in art and to the classifying officers of customs of the United States as "statuary," and specifically as "church statuary." In the opinion of the board it was stated:

"It is the practice of professional sculptors to have their original creations in clay reproduced in plaster of Paris for permanent use as models from which the objects are sculptured in marble, stone or other material. The sculptor invariably goes over his plaster cast with utmost care, not only repairing any defects in the moulding, but defining more accurately the hair, finger nails, folds of the drapery and outline generally, and, above all, perfecting the facial and general expression. These plaster of Paris models are known in commerce and in art as 'casts of sculpture.' They represent the artist's right and title to his creation, and unlike the merchandise in question here, are not painted and decorated, nor dealt in as ordinary commercial articles. Casts in plaster of Paris are likewise produced from rare objects of sculpture, generally for use in museums or art institutions, but sometimes for reproduction by sculptors in marble, stone, etc., and are also called 'casts of sculpture,' but are in strict sense 'casts *from* sculpture,' being cast from plaster of Paris from sculptural objects, such, for example, as the high relief frieze of the Parthenon at Athens, the façade of the guild of the Butchers house at Hildesheim, the tomb of Englebert, and other works in the Metropolitan Museum of Art mentioned in the testimony of Messrs. Stoltzenberg and Trueg."

The board was of opinion that these figures were what is known in commerce, in art and in common speech as "statuary," and were not "specimens or casts of sculpture," and were therefore assessed, as stated.

If these figures were to be entered as statuary, they would come in free under paragraph 649 of the act of 1897, but for the limitation contained in paragraph 454, which limits the term "statuary," as used in the act, so as to "include only such statuary as is cut, carved or otherwise wrought by hand from a solid block of marble, stone, alabaster or other metal, and is the professional production of a statuary or sculptor only." The Circuit Court did not regard it necessary in the disposition of the case to determine whether these particular

figures would come in free as casts of sculpture under paragraph 649, if imported in the crude state, but held that as the figures had been painted and gilded, they were not thereafter casts of sculpture within the meaning of the act.

Upon the argument of this case at bar frequent reference was made by counsel to the provisions in former tariff acts upon this subject, as bearing upon the proper construction of the one under consideration. For convenience these provisions are reproduced in the margin as they existed in the act of 1861, 12 Stat. 178, 193; the Revised Statutes, sec. 2505, pp. 482, 487, 488; the act of 1883, 22 Stat. 488, 513, 520; the act of 1890, 26 Stat. 567, 608, 609; the act of 1894, 28 Stat. 509, 543, 544; and in the present act of 1897, 30 Stat. 151, 201.[1]

---

[1] Act of March 2, 1861, Sec. 23. (12 Stat. 178.)

" . . . All philosophical apparatus, instruments, books, maps and charts, statues, statuary, busts and casts of marble, bronze, alabaster, or plaster of Paris; paintings and drawings, etchings, specimens of sculpture, cabinets of coins, medals, regalia, gems, and all collections of antiquities: *Provided*, The same be specially imported in good faith, for the use of any society incorporated or established for philosophical, literary, or religious purposes, or for the encouragement of the fine arts, or for the use or by the order of any college, academy, school, or seminary of learning in the United States."

Revised Statutes of 1874, Sec. 2505, Paragraphs 1708 and 1726, pp. 482, 487, 488. (16 Stat. 256, 268.)

1708. "Philosophical and scientific apparatus, instruments, and preparations, statuary, casts of marble, bronze, alabaster or plaster of Paris, paintings, drawings, and etchings, specially imported in good faith, for the use of any society or institution incorporated or established for philosophical, educational, scientific or literary purposes, or encouragement of the fine arts, and not intended for sale."

1726. "Regalia and gems, and statues and specimens of sculpture, where specially imported, in good faith, for the use of any society incorporated or established for philosophical, literary or religious purposes, or for the encouragement of the fine arts, or for the use or by the order of any college, academy, school or seminary of learning in the United States."

Act of March 3, 1883. (22 Stat. c. 121, pp. 488, 513, 520.)

(P. 513.) "Paintings, in oil or water colors, and statuary not otherwise provided for, thirty per centum ad valorem. But the term 'statuary,' as used in the laws now in force imposing duties on foreign importations, shall

An examination of the provisions of the various statutes shows a somewhat uniform purpose on the part of Congress to provide free entry to casts of marble, bronze, alabaster or plaster of Paris, and also statuary and specimens of sculpture, when specially imported in good faith for the societies enumerated in the acts. It is also seen that under the language used in these different paragraphs, which may be described as the "philosophical and scientific," and the "regalia and gems"

---

be understood to include professional productions of a statuary or of a sculptor only."

(P. 520.) (Free list.) Par. 759. "Philosophical and scientific apparatus, instruments, and preparations, statuary, casts of marble, bronze, alabaster, or plaster of Paris, paintings, drawings, and etchings, specially imported in good faith for the use of any society or institution incorporated or established for religious, philosophical, educational, scientific, or literary purposes, or encouragement of the fine arts, and not intended for sale."

(P. 520.) (Free list.) Par. 771. "Regalia and gems, statues, statuary, and specimens of sculpture, where specially imported in good faith for the use of any society incorporated or established for philosophical, literary, or religious purposes. . . ."

Act of October 1; 1890. (26 Stat. c. 1244, pp. 567, 602; 608, 609.)

(P. 602.) Par. 465. "Paintings, in oil or water colors, and statuary, not otherwise provided for in this act, fifteen per centum ad valorem; but the term 'statuary,' as herein used, shall be understood to include only such statuary as is cut, carved or otherwise wrought by hand from a solid block or mass of marble, stone, or alabaster, or from metal, and as is the professional production of a statuary or sculptor only."

(P. 608.) (Free list.) Par. 677. "Philosophical and scientific apparatus, instruments and preparations; statuary, casts of marble, bronze, alabaster, or plaster of Paris; paintings, drawings, and etchings, specially imported in good faith for the use of any society or institution incorporated or established for religious, philosophical, educational, scientific, or literary purposes, or for encouragement of the fine arts, and not intended for sale."

(P. 609.) (Free list.) Par. 692. "Regalia and gems, statues, statuary and specimens of sculpture, where specially imported in good faith for the use of any society incorporated or established solely for educational, philosophical, literary, or religious purposes. . . ."

Act of August 27, 1894. (28 Stat. c. 349, pp. 509, 542, 543, 544.)

(P. 542.) (Free list.) Par. 575. "Paintings, . . . . and statuary, not otherwise provided for in this act, but the term 'statuary' as herein used shall be understood to include only professional productions, whether round

paragraphs, some article might be admitted under either
paragraph.  There is no doubt that under the tariff acts
prior to that of 1897, these figures could have been admitted
free of duty, as "casts of plaster of Paris."  Indeed, the Treas-
ury Department had so decided in a case hereafter cited.
Those words, "casts of marble, bronze, alabaster, or plaster
of Paris," which appear in all the statutes cited prior to 1897,
in the philosophical apparatus paragraphs, are left out in the

---

or in relief, in marble, stone, alabaster, wood, or metal, of a statuary or
sculptor. . . ."

(P. 543.) (Free list.) Par. 585. "Philosophical and scientific apparatus,
. . . statuary, casts of marble, bronze, alabaster, or plaster of Paris,
paintings, drawings, and etchings, specially imported in good faith for the
use of any society or institution incorporated or established for religious,
philosophical, educational, scientific, or literary purposes, or for encourage-
ment of the fine arts, and not intended for sale."

(P. 544.) (Free list.) Par. 603. "Regalia and gems, statues, statuary and
specimens or casts of sculpture, where specially imported in good faith for
the use of any society incorporated or established solely for educational,
philosophical, literary, or religious purposes. . . ."

Act of July 24, 1897, (the present act).   (30 Stat. c. 11, pp. 151, 194, 200,
                              201.)

. . (P. 194.) Par. 454. "Paintings, . . . and statuary, not especially
provided for in this act, twenty per centum ad valorem; but the term
'statuary' as used in this act shall be understood to include only such
statuary as is cut, carved or otherwise wrought by hand from a solid block
or mass of marble, stone or alabaster, or from metal, and as is the profes-
sional production of a statuary or sculptor only."

(P. 200.) (Free list.) Par. 638. "Philosophical and scientific apparatus,
utensils, instruments, and preparations, including bottles and boxes con-
taining the same, specially imported in good faith for the use and by order
of any society or institution incorporated or established solely for religious,
philosophical, educational, scientific, or literary purposes, or for the en-
couragement of the fine arts, or for the use or by order of any college,
academy, school or seminary of learning in the United States, or any State
or public library, and not for sale, subject to such regulations as the Secre-
tary of the Treasury shall prescribe."

(P. 201.) (Free list.) Par. 649. "Regalia and gems, statuary, and speci-
mens or casts of sculpture, where specially imported in good faith for the
use and by order of any society incorporated or established solely for reli-
gious, philosophical, educational, scientific, or literary purposes, or for the
encouragement of the fine arts, . . . and not for sale. . . ."

act of 1897, paragraph 638, and it is therefore urged that the figures are not entitled to free entry, as they are not casts of sculpture,. provided for in paragraph 649. The question is, therefore, whether the omission of those words in paragraph 638 prevents the free entry of these figures, or are they properly described as casts of sculpture, and therefore entitled to free entry under paragraph 649.

We do not attach any very great importance, as evidence : of the intention of Congress, to the omission in the act of 1897 above referred to. The language used in paragraph 649 is very broad, including all casts of sculpture, as well those heretofore mentioned' in paragraphs in prior statutes similar to paragraph 638 as others. The omission in the latter paragraph was, therefore, immaterial if these figures are casts of sculpture. Although they might heretofore have come in under the designation " casts of plaster of Paris " as contained in former paragraphs, we think they also might have come in under .the designation " casts of sculpture " contained in the act of 1894 as well as in the act of 1897, and that it was not intended by Congress, in omitting the words in the latter act as to casts of plaster of Paris, in paragraph 638, to prevent their free-entry under paragraph 649. The language in paragraph 638 was simply unnecessary in a case where the same articles were entitled to free entry under another paragraph.

In attempting to understand the true construction of the words used in the act of 1897 we are not very greatly aided by the opinions given by various artists called by the government and contained in this record, as to what was the proper designation of the figures. These opinions varied, although based upon conceded facts as to the manner and process by which the figures were produced. According to some of them there were but two kinds of " casts of sculpture;" one where professional sculptors have their own original creations of clay reproduced in plaster of Paris for permanent use as models and from which objects are sculptured in marble, stone or other material; and the other, where casts in plaster of Paris are

produced from rare objects of sculpture, generally for use in museums or art institutes. Some regarded the term "sculpture so wide that it was difficult to define definitely," although they thought that the figures in question were not casts of sculpture, while some regarded casts of sculpture "as such classes of plaster casts or clay or marble or bronze as are to stand singly and alone, and not be sold in endless numbers, and to be exhibited temporarily in some exhibition." We think the last definition is inaccurate and inadmissible. Under this view, whether a figure is a cast of sculpture or not, does not in the least depend upon how it is made. It is the use to which it is destined which is to determine what it is in fact. If there are to be a great many of them, to be "sold in endless numbers," they are not casts of sculpture, no matter how they are made, and if they are to "stand singly" and "be exhibited temporarily," then they are such casts. We are not satisfied as to the correctness or completeness of this definition. Whether in one case the cast is for the use of the sculpture only or in the other is destined to be reproduced indefinitely, we think is not material. They are made in the same manner, reproduced from clay, and the same means or process is taken or employed in obtaining the result. Whether the clay model is the work of the superior genius of a great sculptor or is the result of the efforts of one who could not be classed as a genius at all, they are both fashioned in the same way and the same process is followed with regard to both, and we do not think that in this statute there was any intention to confine the meaning to casts of those clay figures which were fashioned by the hand of genius, while excluding those of inferior artists or workmen. The witnesses are not, however, all of one mind, even upon the meaning of the term. Some thought that these were casts of sculpture in a certain sense as long as they remained simply plaster casts, but just as soon as additional touches were given to the casts, in the way of paint or ornamentation, the casts lost their original character as plaster casts and became statuary in wood or alabaster or bronze.

At any rate, it would cease to be an article of clay and would become a finished thing.  Just as soon as a cast of sculpture was painted it would in the opinion of some of the witnesses cease to be a cast of sculpture.

Some of the artists said that you might take a cast of old sculpture, such as the *Venus de Milo,* and different antiques and reproduce them in plaster, and they would be casts of old sculpture.  But whether the figures in question here were casts of sculpture, some of the witnesses were not sure.

One witness for the government gave as his opinion that the figures in question were casts or specimens because they are sculpture.  As to whether they were cast or moulded, he replied that he could not state definitely, but presumably they were casts.

Another witness for the government was not willing to swear that the figures were not casts of sculpture, while still another said that in his judgment the figures in question were plaster casts in sculpture.  He also thought that they might be termed casts of sculpture.  Another witness for the government thought they might be called casts of bad sculpture, and that they were such articles as he had heard artists call casts of sculpture.

This brief review of some of the evidence shows the difference of opinion among the artists themselves as to what would come within their understanding of the definition of the term "casts of sculpture."  The artists evidently had a contempt for the figures as specimens of art, and very probably that contempt was well founded; but, as we have said, the opinions really give no aid in considering whether the figures are or are not casts of sculpture.  The description of the manner in which they are made, as set forth in the foregoing statement of facts, and also the evidence of the witnesses for the government, showing the unity of the method and process with that followed in the case of an admitted cast of sculpture, furnish us better means of determining the question in dispute than may be found in the opinions set forth in the record, and yet some of

the witnesses do in fact, as we have seen, admit that the figures are casts of sculpture, bad though they may be.

The government also examined one or two witnesses who were agents or salesmen for manufacturers in this country of what they stated to be substantially the same class of figures as the ones under discussion, and in their catalogues describing the various articles for sale, figures such as these were generally designated as "statuary," and when taking orders for such goods they were called "statuary" or "composition statues."

One of the customs examiners also testified that for the last few years articles of the nature here in question had been returned on invoices to the collector as "church statuary composed of plaster, decorated, or pulverized cement and plaster." The witness used the expression "church statuary composed of" as having been given him by some superior officer, and it was accepted by him as such.

It will be observed that there is nothing in the tariff act which speaks of "church statuary" by name. We are not satisfied from this evidence that these figures are not casts of sculpture within the meaning of the statute, nor are we impressed with the statement of some of the witnesses that if in what is termed their crude state these figures might or would be described as casts of sculpture, they would cease to be such when painted or decorated. They are still, in substance, the same thing, whether painted or not. How does the mere gilding or painting alter their original character? Some little value has perhaps been added to them, but they yet remain what they were before the painting was done. Painting a marble statue does not alter its original substance, or give the subject a new definition or meaning. Some marble statues, the work of a great sculptor, have been slightly painted under his own direction for the purpose, as supposed, of imparting a a more lifelike appearance to the statue, and of possibly thereby enhancing its value. But the statue remained a statue nevertheless.

It is so, as we think, in this case. The painting or gilding

was done to render the figures more fit for the only purpose of their importation—that is, for use in a religious society. And it was the object, as we believe, of the statute to admit such works free of duty.

In case, No. 5549, Synopsis of Decisions of the Treasury Department, 1883, p. 41, it was said that the case related to certain images made of earthen substances which on importation were subjected to duty at the rate of forty per centum *ad valorem,* but were claimed in the protest filed to be dutiable at the rate of ten per centum *ad valorem,* under the provisions for "statuary" contained in schedule M, Revised Statutes, p. 478, under heading "Paintings and Statuary;" the word "statuary," being defined as limited "to include professional productions of a statuary, or of a sculptor only." It appeared on the trial that the images were made at Munich by persons who professed to have made a study of the art of sculpture for many years and who acted under the general supervision of an acknowledged sculptor. Several copies were made from one model, and in ordering them the importer designated which he wanted by the number of the article in a catalogue, and the price of the images varied from five to a hundred dollars.

The Circuit Court for the Southern District of New York held that the articles were entitled to admission as statuary under the provision above mentioned, and the department acquiesced in the opinion of the court. In that case the department was of opinion that the works were obviously made by skillful men, and might come in even under the limitation of the word "statuary" as defined in the act.

It cannot be and is not claimed that the figures in question here could come in under the term "statuary," as that term is defined in the statute of 1897, paragraph 454, which is much more narrow than that of the Revised Statutes. The case shows, however, the tendency of the department to a liberal construction of the tariff act in this regard.

On December 22, 1885, Synopsis of Decisions of the Treasury Department, 1885, p. 513, No. 7274, the question was sub-

mitted as to whether figures similar to those under considera-
tion were entitled to free admission under the act of 1883.
The department held that they could not be regarded as
"statuary" because of the limitation of the meaning of the
word "statuary," as used in that act, 22 Stat. 513, which pro-
vided that the word "statuary" "should be understood to
include professional productions of a statuary or of a sculptor
only," but that they might be admitted as casts of plaster of
Paris under paragraph 759 of the free list. Paragraph 771
did not contain the words "casts of sculpture."

In Synopsis of Decisions, Treasury Department, July to
December, 1891, vol. 2, p. 1164, there is contained a reply to
the naval officer of New York, relative to the proper classifica-
tion of certain figures imported and claimed to be free of duty
as statuary or as casts of plaster of Paris, imported for a church
under paragraph 677, or as statues, statuary or specimens of
sculpture, under paragraph 692 of the tariff act of 1890. The
Acting Secretary referred to the fact that the board of general
appraisers had held that the restrictive definition in regard to
"statuary" under paragraph 465 did not apply to such statuary
as is specified in the free list. The language of that paragraph
(465) the board held limited its definition of the term "statu-
ary" to that paragraph alone. Continuing, the Secretary said:

"The department believes that the crude or inartistic char-
acter of the figures under consideration cannot be urged as a
reason for their exclusion from the benefits of free entry. It
is fair to infer a liberal intention on the part of Congress from
the fact of its inclusion of religious institutions among those
to which the privilege of free entry is extended. Religious
institutions are not schools of art, nor can congregations with-
out adequate means always consult esthetic rules in regard to
the equipment of their churches. It is the sentiment of pious
associations which gives the figure its efficiency as an aid to
religious worship, and the plaster cast may in this way be as
serviceable to the humble worshiper as the more costly work
of genius."

The subject was again before the Treasury Department on April 26, 1893. Synopsis of Decisions, Treasury Department, 1893, p. 340. As appears upon its face the letter of the Secretary was in reply to a communication from the board of general appraisers, protesting against the free entry of articles of this nature under the act of 1890, because of the advantages thus given to the foreign dealers in these figures, some of whom had a store in Montreal, although the figures were manufactured in Munich, and the order was supplied from the Montreal store, and the board insisted that the figures were not entitled to such entry by the true construction of the statute. The Secretary, in reply, referred to what the board stated to have been the evident intention of Congress in the act that the "objects exempted from duty should be of such high order as to inspire admiration and devotional feeling," etc., and held that the views of the board might "apply to paragraph 692 and 465, but not to paragraph 677, which provides (with the restriction enumerated in paragraph 465 and implied in paragraph 692) for the exemption from duty of all casts of plaster of Paris imported in good faith for the use of any society or institution incorporated or established for religious purposes."

It was further stated that "the department cannot interpret the provisions of paragraph 677 as establishing in any respect the esthetic standard for such importations, and without discussing the propriety of such standard must administer the law according to its apparent intent." Also: "Under the last named paragraph (677) it would appear that any plaster cast which should be regarded by a religious society as a desirable acquisition, and shall be classified by the collector as coming within the terms of that paragraph, may be imported free of all duty without regard to its artistic character."

Looking at the various provisions in the tariff statutes, from and including 1861 to and including that of 1897, and taking into consideration the evidence in the record in this case, together with the action of the Treasury Department, as above referred to, the answer to the question of what is the

true meaning or construction of the words "casts of sculpture," as used in the statute of 1897, is not perfectly clear. Some fair reason might, perhaps, be given for a construction which refuses free entry to these figures, but we think that the purpose of Congress was to permit their introduction free of duty as casts of sculpture, when specially imported in good faith for the use and by the order of any of the institutions named in the act. The paragraph in question (649) makes it necessary not only that the casts of sculpture should be specially imported in good faith for the use of a society, but it must be so imported *by the order* of such society. Here for the first time it is made necessary that the importation must have been *by order* of the society, which words are a still further limitation of the conditions upon the existence of which free entry is permitted.

It may well be that when the act of 1897 was drawn, its framers had in mind the objections above mentioned, made by the board of general appraisers, and therefore further limited the right of free entry to a special importation in good faith for the use *and by order* of the society, and to that extent protecting the interests of the "regular importers who sell from stock," while at the same time recognizing the policy of permitting a free entry to those societies which in good faith ordered the articles for their own special use.

We are of opinion that the evidence does not justify the assertion that the articles in question were simply known in a commercial sense as "statuary" or "church statuary." The fact that figures of this nature were designated as statuary in a catalogue of a manufacturer in this country does not clearly or conclusively establish such commercial designation. They were also designated composition statues by the salesman when taking orders for them. If the articles were also known as "casts of sculpture," and such language correctly described them, then they would come within the statute, although some manufacturers in this country should, for purposes of a short and easy description, describe them in the catalogue as "stat-

uary," or "composition statues." It seems to us they answer the description of casts of sculpture and are properly described as such in the act.

This provision of the statute should be liberally construed in favor of the importer, and if there were any fair doubt as to the true construction of the provision in question the courts should resolve the doubt in his favor. *American Net & Twine Company* v. *Worthington,* 141 U. S. 468; *United States* v. *Wigglesworth,* 2 Story, 369; *Rice* v. *United States,* 53 Fed. Rep. 910.

The judgments of the Circuit Court of Appeals of the Second Circuit and of the Circuit Court in the Southern District of New York are reversed, with directions to the Circuit Court to reverse the decision of the board of general appraisers and of the collector, and to direct the collector to admit the figures to free entry.

*So ordered.*