## COMMISSIONER OF INTERNAL REVENUE v. LIBERTY NAT. CO.

### No. 440.

Circuit Court of Appeals, Tenth Circuit.
March 7, 1932.

Rehearing Denied April 23, 1932.

LEWIS, Circuit Judge, dissenting.

P. C. Alexander, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key and John G. Remey, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and R. N. McMillan, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for petitioner.

Charles F. Miller, of Washington, D. C. (Glenn J. Homan, of Oklahoma City, Okl., on the brief), for respondent.

Before LEWIS and McDERMOTT, Circuit Judges, and SYMES, District Judge.

McDERMOTT, Circuit Judge.

The Liberty National Company and the Liberty National Bank are affiliated corporations—child and parent. Section 240 of the Revenue Act of 1918 (40 Stat. 1082) required them to file consolidated returns, and

taxes were computed on the invested capital of the unit and levied upon the consolidated income of the unit. Items of profit and loss arising out of transactions between corporations within the unit were disregarded. For taxation purposes, the group was treated as a unit.

Prior to 1921 the bank had acquired Liberty bonds by purchase from the public of a par value of $750,000, for which it had paid $713,038.25. These bonds had increased in value by the fall of 1921 to the extent of about $22,000. On November 23, 1921, the Revenue Act of 1921 was passed, effective as of that date. 42 Stat. 227. It authorized affiliated corporations to file separate returns for the taxable year 1922. The bank had these bonds on hand that showed a large profit on which a tax must be paid when they were sold. The bank conceived the idea of selling these bonds to its subsidiary at a large profit; this profit would then be eliminated in the consolidated return for 1921; separate returns could be filed for 1922; the subsidiary could sell the bonds in 1922 and return no profit on the sale, and in this manner evade paying any tax on the profit realized when the bonds were sold to the public.

That is what was done. Two weeks after the 1921 law was passed, the bank sold these bonds to its subsidiary; the bank realized a profit on the sale of about $22,000. In the consolidated return for 1921 this profit was properly eliminated, and no tax paid thereon. Early in 1922 the subsidiary sold the bonds for a trifle more than the December purchase price, but for $22,000 more than was paid for the bonds when they were acquired by the affiliated unit. Separate returns were then filed for 1922; the subsidiary returned as profit the trifling difference between the sale price and the December purchase price; the Commissioner determined that the $22,000 realized profit should be taxed. The Board of Tax Appeals, three members dissenting, held with the company; as a result a realized profit has escaped tax by the simple expedient outlined. If there is such a loophole in the taxing laws, respondent is entitled to go through it. But we do not believe there is.

■ That the general intent of the taxing statutes is to tax a profit realized on a sale is not open to question. That there is a realized profit here is admitted. The respondent asserts that the profit on such a sale is the difference between the sale price and "the cost of such property." Section 202 (a). It argues that the "cost" means the cost to

the seller. Ordinarily, of course, that is true. But who purchased the bonds—the company or the affiliated companies? Under the 1918 act the bank and the company were treated as an economic unit. The unit was taxed as such. Intercompany profits were not taxed. For four years the respondent had the benefit of this statute. For 1921, taxes were levied on the group as a unit. In 1922 the respondent says that, while the affiliates were a unit in 1921 for the purpose of eliminating profits, they were not a unit in 1921 for the purpose of purchasing bonds. It says that the bonds were purchased, not by the unit, but by a constituent member thereof. We do not agree. Respondent cannot blow hot and cold. The taxable unit from 1918 to 1921 was the group, and this for all tax purposes, not only for elimination of profit on intercompany transactions, but also for the purpose of determining cost of property acquired by the group. In Golden Cycle Corp. v. Commissioner, 51 F.(2d) 927, this court reviewed the history of the statute requiring consolidated returns, and the applicable decisions, and held that affiliated corporations must be considered as a business unit. We adhere to that holding. It follows that the Commissioner was right in treating the cost of the bonds as the price paid therefor by the unit, and not the price paid one constituent member by another.

■ The Revenue Act of 1928 (Sec. 113 (a) (12), 26 USCA § 2113 (a) (12), provided that, "in the case of property acquired by a corporation, during a period of affiliation, from a corporation with which it was affiliated, the basis of such property, after such period of affiliation, shall be determined, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, without regard to inter-company transactions in respect of which gain or loss was not recognized."

It is argued that the enactment of this statute demonstrates that such was not the law prior to 1928. The conclusion does not follow. In Luckenbach S. S. Co. v. United States, 280 U. S. 173, 50 S. Ct. 148, 74 L. Ed. 356, the court held a statute was enacted not to change the prior practice, but to recognize it and crystallize it into statute law. So here. When this section of the 1928 statute was reported to the Senate, the Chairman of the Finance Committee said: "It is highly important that in such cases the basis in the hands of the corporation after the affiliation should be the same as it would be if still in the hands of the corporation by which the

property was brought into the affiliated group, in accordance with the present interpretation of the Treasury, except in those cases where a proper adjustment of the basis should be made."

■ Furthermore, the brief of counsel for the government assures us that the ruling of the Commissioner here challenged has long been the established practice of the Treasury Department in its administration of the law. That this is an entirely proper way to ascertain the practice of the Department, see United States v. Boston & M. R. Co., 279 U. S. 732, 49 S. Ct. 505, 73 L. Ed. 929. Undoubtedly this has been the practice, for certainly the Department would not readily countenance any such simple device to evade taxes that ought to be paid. A long-established departmental practice is, of course, entitled to much consideration. Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 74 L. Ed. 457. That courts may look to the general plan and intent of a statute in ascertaining the meaning of words and phrases, see United States v. Ludey, 274 U. S. 295, 47 S. Ct. 608, 71 L. Ed. 1054.

■ The respondent answers that it did not in fact make the profit on this sale which has been assessed to it as income; that this profit was made by the bank, a separate corporation; that it cannot be required to pay a tax upon a profit accruing to another corporation. Ordinarily, this would be a complete answer. But the 1918 statute provided that, if one corporation owns "substantially all" the stock of another, the corporations should be deemed to be affiliated, that is, treated as a unit. The regulations provided that ownership of 95 per cent. of the stock constitutes an affiliation. Reg. 45, Art. 633. The Second Circuit has held that there is no affiliation unless the interest not owned "is so small as to be practically negligible." Ice Service Co. v. Commissioner (C. C. A.) 30 F.(2d) 230, 231. Under such requirements for affiliation, the injustice pictured by respondent is more theoretical than actual. But a more satisfactory answer is this: Respondent purchased bonds from its affiliate at a time when the intercompany profit realized was not taxable; in that transaction, it could have protected itself against the tax to become due when the bonds were eventually sold to outsiders, either by indemnity from its affiliate which realized the nontaxable profit, or in the amount paid for the bonds. It is not, as we see it, a question of the respondent's right to file a separate return in 1922; that right is unquestioned.

The question is this: When it becomes necessary, in its 1922 separate return, to go back to the affiliated period to ascertain cost, shall that cost be determined without regard to intercompany transactions? The question is not free from doubt, but the majority of the court is of the opinion that, since the corporations were treated as a unit for all other tax purposes, they should be treated as a unit for this purpose, and that the cost was the price paid when the bonds came into the unit during the affiliation, and not the price paid one affiliate by another during that period.

The order of the Board of Tax Appeals is reversed for further proceedings in harmony with this opinion.

Reversed.

LEWIS, Circuit Judge (dissenting).

The facts in the case were found from the allegations and admissions of the pleadings. I find nothing in them that tends to sustain an inference or intimation that what was done by respondent was a device to evade paying any tax on profits when respondent should sell the bonds. Nor do I see how it can be maintained on the facts that the bank and respondent bought the bonds. The petitioner alleged and the Board of Tax Appeals found that prior to 1921 the bank bought the bonds of a par value of $750,000 from the public, paying therefor $713,038.25. It was admitted and the Board found that petitioner bought these bonds from the bank on December 6, 1921, for $735,000, which sum in large part was borrowed from outside banks. None of it so far as the record shows was funds of the Liberty National Bank or borrowed from it. The two corporations were distinct—one a national, the other a state organization—with different purposes and powers. They made, were required to make, consolidated returns as affiliates under the Act of 1918 for the years 1918–1921 inclusive. That, of course, was only for the purpose of Federal taxation. But the majority opinion seems to rest on the assumption that the Act of 1918 destroyed the separate identity of the affiliates for the time being and made them one for all purposes, to which I cannot yield assent. I agree with the statement of the Board in its opinion:

"Except for the purposes of Federal income tax the two concerns here involved during all the time material to this proceeding were separate corporate entities. * * * No law known to this Board barred either

corporation from dealing with the other, although for tax purposes such transaction could not result in taxable gain or deductible loss during the period in which consolidated returns were required."

The respondent sold $9,200 face value of the bonds in 1921, and the profit or loss on their purchase and sale was returned in the consolidated return for 1921. During 1922 respondent sold the remaining bonds of a par value of $740,800 to the public and received $726,128.36 for them, for which it had paid the bank $725,984. It made a separate return for the year 1922 as it had a right to do under Section 240 (a) of the Act of 1921 (42 Stat. 227, 260), and computed its profits according to the terms of Section 202 (a) of said act:

"That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property. * * *"

Petitioner contends that to the profit so realized by respondent arising from what it paid the bank for the bonds and the amount it sold them for there should be added the profit realized by the bank ($21,505.21) when it sold the $740,800 in bonds to respondent. I am unable to see that the nontaxable profits so realized and retained by the bank during affiliation was income taxable to respondent. It is said that respondent had the benefit of the Act of 1918 in making with its affiliate consolidated returns for 1918–1921 inclusive. Surely, it cannot be meant that compliance with the requirements of a tax act is binding consideration for submission to an unauthorized tax. This is an example of casus omissus. The Board in concluding its opinion said:

"Clearly, since the property involved was not subject to depreciation, the gain or loss from such sale was the difference between cost (to taxpayer) and selling price. To hold otherwise would be to extend the purposes and effect of affiliation for income tax purposes by implication and this is not within the power of the Commissioner or of the Board. The plain language of the law must prevail. Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211; Benziger v. United States, 192 U. S. 38, 55, 24 S. Ct. 189, 48 L. Ed. 331; Shwab v. Doyle, 258 U. S. 529, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454; and United States v. Merriam, 263 U. S. 179, 187, 44 S. Ct. 69, 68 L. Ed. 240, 29 A. L. R. 1547."

I think the order of the Board of Tax Appeals should be affirmed.

## On Petition for Rehearing.

### PER CURIAM.

The respondent moves that an order be directed to the Board of Tax Appeals requiring it to prepare and forward the original tax returns of the respondent and the Liberty National Bank for the years 1919, 1920, and 1921. In support of the motion, it is stated that such exhibits will disclose that the bank and the company filed separate returns for the years prior to 1922, and that the government first asserted affiliation in 1924. It is stated in the motion that affiliation for those years is conceded.

This motion should be denied for the following reasons:

(a) Section 240(a) of the Revenue Act of 1918 (40 Stat. 1081) requires that a consolidated return shall be made by affiliated corporations. It would avail respondent nothing to show that it had not complied with the statute.

(b) In its petition filed before the Board of Tax Appeals, the respondent alleged that the government treated the respondent as affiliated with the Liberty National Bank during the taxable year in question. This allegation was admitted by the Commissioner. It appears, therefore, that no issue was framed before the Board of Tax Appeals on the question now sought to be presented to this court.

(c) The Board of Tax Appeals made a specific finding of fact that "from the date of its organization until the close of the taxable year 1921 the petitioner and the Liberty National Bank filed consolidated income tax returns which were accepted by the Commissioner." The evidence taken before the Board of Tax Appeals is not in the record. Manifestly this court should not set aside a finding of fact made by the Board, after hearing the evidence, when the evidence has not been preserved for our review.

(d) In its brief filed in this court, the respondent stated that the following facts are presented by the record:

"In computing the consolidated net income of the respondent and the Liberty National Bank for the year 1921, your petitioner (the respondent below) 'recognized no profit on the inter-company sale of Liberty Bonds.' * * *

"Inasmuch as respondent and the Liberty National Bank were admittedly affiliated dur-

ing the year 1921, it is at once apparent that the mandatory language of Sec. 240(e), of the Revenue Act of 1918 (quoted supra), required determination of both corporations' tax liability for the taxable year 1921, on the basis of a consolidated return."

In its motion filed in this court, the respondent does not say that a tax was paid upon this transaction in 1921, by either corporation, which is the material fact adverted to in our opinion.

The motion to supplement the record, and the petition for a rehearing, is denied.

The mandate is stayed for thirty days as provided by rule 29(3) of this court.