ALUMINUM CO. OF AMERICA v. UNITED STATES.

No. 5105.

Circuit Court of Appeals, Third Circuit. Sept. 29, 1933.

William Watson Smith, John G. Buchanan, Paul G. Rodewald, and Smith, Buchanan, Scott & Gordon, all of Pittsburgh, Pa., for appellant.

Louis E. Graham, U. S. Atty., and John A. McCann, Sp. Atty., Bureau of Internal Revenue, both of Pittsburgh, Pa. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Floyd A. Toomey, Asst. Gen. Counsel, Bureau of Internal Revenue, both of Washington, D. C., of counsel), for the United States.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

Under the law as it stood in 1917, affiliated corporations were required to file consolidated returns for excess-profits taxes and separate returns for income taxes. In consonance with the law, Aluminum Company of America and its twenty-seven affiliated corporations made returns of both kinds for that year. During the year various units of this group of corporations had inter-company transactions of sale and purchase of commodities in which, pursuant to a recognized business policy of the group, profits were allowed and made. They were excluded from the consolidated return for excess-profits tax purposes and included in the separate returns of the trading companies for income tax purposes. These profits, though actual between the trading companies, were merely book profits with respect to the entire group for, obviously, nothing coming in and nothing going out, they involved no gains to the enterprise as a whole. The plaintiff paid the excess-profits taxes and the several affiliated corporations paid the income taxes (including taxes on these profits) for 1917 as they were required to do. But when they came to prepare their returns for the tax year 1918, there having been a change in the taxing acts, they were confronted by a statute which compelled affiliated corporations to file consolidated returns for both excess-profits taxes and income taxes and—what is here critically important—required that the net income for taxes of both kinds should be determined upon the same basis, which for the purposes of this case was cost or inventory value. Revenue Act 1918, §§ 230, 240, 320, 40 Stat. 1075, 1081, 1091. The plaintiff and its affiliated corporations in preparing a consolidated return for income taxes for 1918 found certain merchandise sold in 1917 by some of the corporations and purchased by others still in the inventories of the latter as of the first day of 1918. Accordingly, in making their consolidated or group income tax return for 1918, they eliminated the inter-company profits thereon and calculated cost to the group upon the figures at which the inter-company purchases had been made in 1917 (which included profits), not upon original cost to the inter-company sellers. As these inter-company profits had not been included in the 1917 consolidated return for excess-profits taxes, the group of course did not include them in its 1918 consolidated return for such taxes but, quite properly, took original cost as a basis. Thus it appears that the group returns for excess-profits taxes and income taxes for 1918 were not computed upon the same basis but upon markedly different bases; one original cost and the other cost stepped up by book profits.

With sections 240 and 320 of the Revenue Act of 1918 before him, the Commissioner of Internal Revenue, in assessing the plaintiff's income taxes for 1918 on its consolidated return, disregarded entirely the inter-company sales in 1917 on which an aggregate profit of $1,694,355.17 had been computed for the determination of the income tax liability of the several trading companies and took the original cost price of such merchandise before any inter-company sales for the basis. As will readily be seen, the practical result of that official action was to impose a tax not only on the profits the taxpayer had earned as a group in 1918 but also on some of the book profits earned by the affiliated corporations in their inter-company business in 1917 upon which they had already paid income taxes. Of this the plaintiff, having paid the consolidated income taxes for 1918, complains bitterly. The grounds of its complaint in its suit in the District Court to recover these taxes, and on this appeal from a judgment dismissing its petition, are several; the first being that profits of the selling corporations on inter-company sales in 1917 of merchandise remaining in the inventories of the purchasing corporations at the beginning of 1918 should, for income tax purposes, be included as costs in computing profits made by the group on the sales of the

same merchandise to the public in that year. In other words, it says profits earned by the underlying selling corporations became a part of the cost to the underlying purchasing corporations and that cost to the purchasing corporations was, in consequence, cost to the affiliated group of which they were members.

The trouble with this proposition is twofold: first, that the income tax returns for 1917 were made by separate corporations having to do exclusively with their separate profits on which they separately paid income taxes; second, that the income tax return for 1918 was a consolidated or group return. It had to do with the entire enterprise. In it, loss of one corporation could be set off against profits of another. On it, group taxes were assessed and paid, which, in case of loss by one corporation or another, might conceivably be less than the aggregate of the taxes of the members of the group. Such a situation was clearly recognized when the legislation providing consolidated income tax returns by affiliated corporations was enacted. However, and without regard to the practical effect, sometimes advantageous and sometimes disadvantageous to a group, the Congress by the tax law in force in 1918 prescribed the basis of determining the taxable net income of corporations—cost or inventories—and very definitely provided that the basis of determining income taxes and excess-profits taxes due upon consolidated returns of affiliated corporations should be the same. It is clear that by this legislation the Congress was trying to give uniformity to taxation of corporations and particularly to deal with closely affiliated or group corporations, as it had to do, in view of their number, the complexity of their organization and their importance as sources of revenue, intending, doubtless, to afford a means correctly to ascertain the tax justly due and effectively to preclude redistribution of capital and forestall manipulation of profits among the component corporations by means of inter-company transactions. The purpose of the Congress in requiring consolidated returns by affiliated corporations has been repeatedly stated by the Supreme Court and lower courts to the effect that: "The purpose of section 240 [a section here in question] was, by means of consolidated returns, to require taxes to be levied according to the true net income and invested capital resulting from and employed in a single business enterprise even though it was conducted by means of more than one corporation." Handy & Harman v. Burnet, 284 U. S. 136, 140, 52 S. Ct. 51, 52, 76 L. Ed. 207; Burnet v. Aluminum Goods Manufacturing Company, 287 U.

S. 544, 53 S. Ct. 227, 77 L. Ed. 484 (1933); Atlantic City Electric Company v. Commissioner, 288 U. S. 152, 53 S. Ct. 383, 77 L. Ed. 667; Golden Cycle Corporation v. Commissioner (C. C. A.) 51 F.(2d) 927. In other words, the legislation was based upon the conception of a group of corporations distinguished from separate and individual corporations, both subject to excess-profits and income taxes; and unless the Congress was without power, for reasons presently to be discussed, to prescribe how taxable net income of corporations of both classes should, with respect to taxes of both kinds, be determined, and was without power definitely to prescribe that the basis should in each instance be the same, the plaintiff and its affiliates have by their consolidated income tax return for 1918 stepped outside the law.

The question here presented would scarcely be a problem were it not complicated by its administrative history. This, though disturbing, is not dispositive of the matter. The question was made the subject in 1924 of Solicitor's Memorandum 1530, Cumulative Bulletin 111–1, 307, in which it was ruled that since consolidated returns were not permitted in 1917 for income tax purposes and since inter-company profits were taxed to the separate corporations, such profits should not be eliminated in the computation of consolidated net income for income taxes in 1918. This was a ruling against the original cost basis. It was also held that since consolidated returns were required in 1917 for excess-profits tax purposes, in which inter-company profits were disregarded in computing consolidated net income, such profits should be eliminated in computing the consolidated net income for excess-profits taxes in 1918. The former ruling continued in effect until the decision of the Court of Claims in Packard Motor Car Co. v. United States, 39 F.(2d) 991, Id., 282 U. S. 848, 51 S. Ct. 27, 75 L. Ed. 752, where it was held that profits resulting from inter-company transactions occurring between members of an affiliated group in 1917 should be eliminated in the computation of consolidated net income for 1918 for both income and excess-profits tax purposes. This was an original cost ruling. As this decision was directly contrary to S. M. 1530, that ruling was revoked by General Counsel's Memorandum 9584, Cumulative Bulletin X–2, 372. The decision in the Packard Motor Company case was in accord with the evident trend of decisions to disregard transactions between members of an affiliated group when computing their consolidated net income. Burnet v. Aluminum Goods Manufacturing Company, 287 U. S.

544, 53 S. Ct. 227, 77 L. Ed. 484 (1933); Atlantic City Electric Company v. Commissioner, 288 U. S. 152, 53 S. Ct. 383, 77 L. Ed. 667; Fidelity National Bank & Trust Co. v. Commissioner (C. C. A.) 39 F.(2d) 58, 62; Commissioner v. Liberty National Co. (C. C. A.) 58 F.(2d) 57; Brownsville Coal & Coke Co. v. Heiner (D. C.) 38 F.(2d) 248, 251. On that decision the learned trial court based its judgment in the instant case, which we shall sustain unless we should be influenced by the plaintiff's contention that the ruling of the court in that case, and consequently in this one, was wrong because it effected a double income tax as to those items of inter-company profits which were involved in the 1917 computation and that double taxation cannot be sustained except by express legislative authority.

The trouble with this position,—the plaintiff's second in assailing the tax as unlawfully assessed and collected,—is, as the learned trial judge found, and we observe, that express authority does exist in sections 240 and 320 of the Revenue Act of 1918.

Dealing with group taxation and declaring a basis upon which it should be computed in consolidated returns, the statute means cost to the group as a taxable entity, not cost to a purchasing subsidiary in which there is included a profit to the selling subsidiary. However often such transactions involving profits may occur between affiliated corporations, cost to the group is still the cost to the first selling unit,—the original cost,—and it is plain that the Congress in providing the basis of taxation was fully aware that a situation of double taxation might arise and that, when it did, its mandate of a single basis would apply and should be obeyed.

Clearly there was in this case double taxation on certain inter-company profits made in 1917, yet double taxation is not per se unlawful. Although seemingly unfair, when the purpose of a taxing act is plain courts will not interfere. T. W. Phillips, Jr., Inc., v. Commissioner (C. C. A.) 63 F.(2d) 101. On this point the statute (sections 240 and 320 of the Revenue Act of 1918, 40 Stat. 1081, 1091 and section 1331 of the Revenue Act of 1921, 42 Stat. 319 [26 USCA § 1067]), not being ambiguous, leaves nothing to be construed. It is only possible to give effect to the statute by following its plain words, even though it may result in double taxation. It is not permissible to ignore its words in order to avoid double taxation.

In requiring consolidated income tax returns by affiliated corporations and providing a basis which, as in this case, involves computation (as to costs) in the preceding tax year, the appellant complains that the statute, on an erroneous interpretation by the trial court, was made retroactive when by no express language or necessary implication was it so. United States v. Heth, 3 Cranch, 399, 413, 2 L. Ed. 479; Shwab v. Doyle, 258 U. S. 529, 534, 535, 537, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454. The taxing act dealt only with taxes in tax years and in that sense the tax imposed was not retroactive. In determining gain from transactions in the current year— in this case sales to the public of merchandise involved in inter-company dealings and carried over by the group from the previous year—the statute was not retroactive in its taxing operation, Commissioner v. Liberty National Co. (C. C. A.) 58 F.(2d) 57, 60; it only provided that the taxpayer or the Commissioner might go into the past year for data upon which correctly to determine profits made in the tax year, a practice not only necessary but generally and validly followed in other situations.

Regarding the remaining questions insubstantial, the judgment of the District Court is affirmed.