UNITED STATES *v*. ST. JOSEPH'S CHURCH (No. 5025) [1]

United States Court of Customs and Patent Appeals, December 8, 1960

*George Cochran Doub*, Assistant Attorney General, and *Richard E. FitzGibbon*, Chief, Customs Section, for the United States.

No appearance on behalf of appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

KIRKPATRICK, Judge, delivered the opinion of the court:

This appeal by the Government [3] is from the judgment of the United States Customs Court, First Division, C.D. 2134, sustaining the importer's protest that the imported sedilia should be classified as a pulpit or part of a pulpit under paragraph 1774 of the Tariff Act of 1930, and hence free of duty, rather than as a manufactured article in chief value of marble under paragraph 232(d) of the Tariff Act of 1930, as classified by the collector.

---

[1] C.A.D. 761.

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

[3] Appellee neither filed a brief nor appeared at oral argument.

The pertinent paragraphs are:

Paragraph 1774, Tariff Act of 1930, as amended June 12, 1952, 66 Stat. 137:

Altars, pulpits, communion tables, baptismal fonts, shrines, or parts of any of the foregoing, and statuary (except casts of plaster of paris, or of compositions of paper or papier-mache), imported in good faith for the use of, either by order of or for presentation (without charge to, any corporation or association organized and operated exclusively for religious purposes_____ Free

Paragraph 232(d), Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802:

Marble * * * wholly or partly manufactured into monuments, benches, vases, and other articles, and articles of which these substances or any of them is the component material of chief value, not specially provided for_____ 25% ad val.

The imported article is described on the invoice as "1 Marble Episcopal Sedilia with Venetian Mosaics & Velvet." A sedilia [4] is a chair-like affair usually having three connected seats and set upon a platform.[5] The imported article is made of marble inset with mosaics and with velvet padding attached to the seats and backs. In the sanctuary of some Roman Catholic churches, the central altar is flanked symmetrically by the sedilia and a pulpit.

It is stipulated that the sedilia was imported in good faith for presentation, without charge to and for the use of a corporation or association organized and operated exclusively for religious purposes. The sole issue is whether the sedilia is a pulpit for tariff purposes.

The Customs Court held that the common meaning of the term "pulpits" as used in paragraph 1774, supra, embraces the sedilia at bar. In so holding, the court felt that it was following this court's decision in *Stone & Downer Co.* v. *United States*, 21 CCPA 440, T.D. 46945, in which it was held that, for tariff purposes, a bishop's throne is a pulpit. However, every definition of a pulpit relied upon by the court in the *Stone & Downer* case and quoted in its opinion required two things, first, that it be elevated above the floor of the church and, second, that it be used for preaching, as distinguished from reading or chanting. The court said of the bishop's throne, "It is upon a raised platform within the sanctuary of the church, and, so far as the record shows, is a permanent fixture used by the bishop in official communications and sermons to his congregation." Inasmuch as use for preaching was the point upon which the court distinguished its decision from

---

[4] The word "sedilia" is the plural of the word "sedile." It appears, however, that the singular is seldom used, and, throughout this record, "sedilia" has been used as a singular noun. We shall continue to so use it.

[5] It may be noted in passing that the dictionary definitions which we have found do not include a platform as part of a sedilia or suggest that when in use it must be placed upon one. However, for the purposes of this decision, it will be assumed that the sedilia, when installed, stands upon a platform raised above the level of the sanctuary floor.

that in *Bell* v. *United States*, Abstract 7460, in which a lectern was held to be not a pulpit, the conclusion follows that the court considered use for preaching as one of the essential characteristics of a pulpit. In fact, all through the opinion, the element of preaching was taken as a requisite. With this we fully agree. The idea of preaching is inseparably bound up with that of a pulpit.

That the sedilia is a seat is beyond question, and that its chief use when installed in the church is as a seat—a seat for a priest at intervals when he is not actually officiating—is clear from the testimony of Father English, the only witness called. He testified that on occasions, in certain of the ceremonies of the church, the celebrant stands upon the platform in front of the sedilia and takes part in the service, "Well, for instance, namely for the 'Gloria in excelsis' and the 'Credo' of the mass, which are parts of the mass, and he occupies that, as I say, when a high mass is celebrated." His participation consists of either reading from the scriptures or prayers or reciting or intoning parts of the mass, or "there are some religious orders and two priests participate, one on the pulpit proper and the other at the sedilia, and there is a question and answer and there is a statement from both men at various times on this. Q. This is part of the ceremony? A. Yes." [6]

There is no evidence that the sedilia is ever used as a place from which the priest or any clergyman preaches a sermon or delivers official communications to the congregation. Certainly, the reading of the Gospels and prayers or taking part in portions of the mass cannot be so described, and as to the responses to which the witness referred, there is nothing whatever in the record from which this court can find that they even remotely resemble sermons or that they are other than prescribed liturgical replies. If it is contended that these responses are, in effect, sermons, the burden of proving it was certainly upon the appellee, and it has not done so.

It is worthy of note that in the *Stone & Downer* case Father Johnson, the only witness in that case, testified flatly and unequivocally that "according to the practice of his faith, the bishop's throne was his pulpit" and the court accepted this as testimony as to the meaning of the word "pulpit," at least in church nomenclature. In contradistinction, in the present case Father English (who undoubtedly was a scrupulously truthful witness) carefully avoided saying that the sedilia was a pulpit, that it was considered a pulpit in the practice of the church, or that it was ever called a pulpit or known as such by anybody. Throughout, his testimony upon the point was quite guarded. For example, he said, referring to churches which have but one pulpit,

---

[6] The inference to be drawn from Father English's testimony is that such occasions are infrequent.

that the sedilia "Serves as a kind of secondary pulpit," or, "is used on stated occasions as, you might say, an improvised pulpit."

It is evident that Father English was fully aware of the clear distinction between a sedilia and a pulpit. At one point he refers to "the pulpit proper and the * * * sedilia" and at another point, when asked, in reference to a volume called "The Church Edifice and Its Appointments," "Apparently the author treats those as different articles?" he answered, "Well, of course they are. You have to identify these as different articles, without a doubt."

We do not think that a piece of furniture in the form of a chair, even if it is on rare occasions and in some churches used as an improvised pulpit, is what Congress meant when it placed "pulpits" upon the free list.

█ We agree with the court in the *Stone & Downer* case that, in order to come within the meaning of the word "pulpit," the article in question must be used for the preaching of sermons. We do not by this decision intend to rule that this is the sole requirement for a pulpit, so that any article could be imported as a pulpit simply because it was to be used for a place for someone to stand while he preached. We merely decide that the article here in question is not a pulpit because it lacks an essential requirement of a pulpit.

█ We are aware of the expressions on the part of the Supreme Court and other courts that provisions relating to articles imported solely for religious purposes "should be liberally construed in favor of the importer, and if there were any fair doubt as to the true construction of the provision in question the courts should resolve the doubts in his favor." [7] In this case we do not have such doubt. The intent of Congress in enumerating five specific pieces of ecclesiastical furniture or architecture, and no more, and in failing to include any general phrase such as "and similar articles" was certainly not to invite a strained construction in order to allow free entry for all kinds of church furniture.

Reference has been made in the course of argument to the doctrine of legislative ratification. The statute has been amended twice since the decision in the *Stone & Downer* case. The appellant argues that the amendments were not such as could provide grounds for the application of the rule. We think it entirely immaterial whether the amendments did accomplish a ratification of the *Stone & Downer* decision since we are of the opinion that the imported article does not fall within the meaning of the word "pulpit" as used by the court in the *Stone & Downer* case and that it is an entirely different article from that which was the subject of that decision.

The decision of the Customs Court is *reversed*.

---

[7] *Bensiger* v. *United States*, 192 U.S. 38.