### HEITSCH v. KAVANAGH.
No. 7229.

United States District Court
E. D. Michigan, S. D.
March 16, 1951.

750

Robert D. Heitsch, Pontiac, Mich., for plaintiff.

Edward T. Kane, U. S. Atty., Roger P. O'Connor, Asst. U. S. Atty., Detroit, Mich., for defendant.

KOSCINSKI, District Judge.

Plaintiff filed this suit as executor of the estate of Janet H. Heitsch, deceased, to recover federal estate taxes paid by him under protest.

It is plaintiff's claim that provisions of the Internal Revenue Code requiring payment of federal estate taxes are void as violative of the Constitution of the United States in the following respects:

a. That Secs. 3760(a) (b) and 3761(a), Title 26 U.S.C.A., authorizing compromises and closing agreements, attempt to confer important legislative functions on members of the executive branch of the government, thus violating Art. I, Sec. I of the Constitution which vests legislative power in Congress, and also purport to authorize executive officers to substitute their judgment for legislative authority so as to arrive at a tax which could represent a different percentage of the value of each similar estate in any part of the United States, contrary to Art. I, Sec. 8 of the Constitution which requires all duties, imposts, and

excises to be uniform throughout the United States;

b. That Sec. 811(c) governing transfers in contemplation of death or taking effect at death, purported to deprive plaintiff's decedent of the opportunity afforded others with like estates, who did not die within a period of two years after the first effective date of the estate tax, to dispose of her estate by gift, inasmuch as on such effective date she was confined to a hospital with illness which caused her death; that the difference between estate and gift tax rates was so great as to violate the uniformity clause, Art. I, Sec. 8, and also amounted to taking property for public use without just compensation and without due process of law, which is prohibited by the 5th Amendment;

c. That no adequate machinery is provided to procure equalization of assessment for estate tax purposes under the estate tax provisions throughout the United States, resulting in lack of uniformity required by Art. 1, Sec. 8;

d. That estate tax rates effective under Sec. 935, on September 21, 1941, as to persons dying after that date, are so excessive as to deprive beneficiaries of estates of property without due process of law and without just compensation, contrary to the 5th Amendment;

e. That estate tax provisions encroach upon exclusive functions of states to control descent and distribution of property in that rates are so excessive that they cannot be regarded as a mere taxing incident, and that machinery set up for administration of the Act and actual attempt to administer it are so inadequate that they unreasonably interfere with and prolong beyond a point of any reasonable taxing incident the administration of estates which is purely a state function; that such rights were reserved to the states under the 10th Amendment;

f. That the difference between taxes on transfers by gift and disposition of property by will or descent, is an attempt to induce dispositions by gift during lifetime rather than by will or descent, whereas power over such policy was expressly reserved to the states, and no other provision of the Constitution delegates such power to the United States.

## Findings of Fact

1. Janet H. Heitsch executed a will on August 22, 1941, while she was a patient in a hospital, suffering from illness which caused her death on November 8, 1941. Her will was duly admitted to probate and plaintiff was appointed executor of her estate.

2. A federal estate tax return was filed by the executor which reported gifts made individually to persons named as residuary legatees in her will. All such gifts were made more than two years prior to the death of the deceased.

3. Federal estate taxes and interest were paid under protest by plaintiff as follows:

| | | |
|---|---|---|
| February 15, 1943 — | $60,162.27 |
| March 13, 1943 — | 1,515.27 |
| February 23, 1944 — | 6,551.27 |
| April 4, 1944 — | 393.08 |

The additional assessments, made following payment of the $60,162.27, were due to errors in computation based on information in the return, minor adjustments in values of property included in the return, and disallowance of attorney and executor fees and administration expenses to the extent that actual amounts paid were exceeded by anticipated amounts in the return.

4. A claim for refund of the full amount paid for estate taxes, based on substantially the same grounds relied on in the complaint, was denied.

5. No transfers by deceased during her lifetime were included in her taxable estate.

6. No closing agreement or compromise was proposed or entered into by the executor or any other person on behalf of the estate of the deceased.

## Conclusions of Law

1. Secs. 3760(a), (b), and 3761 (a), Title 26 U.S.C.A. grant authority to the administrative officers named therein to settle and compromise matters relating to tax liability. Specific rates of taxation and incidents of taxation to which they

shall apply, are set forth in various other sections of the Internal Revenue Code. The administrative officers charged with the duty of assessing and collecting taxes must apply such specified rates to the objects which Congress has chosen for taxation under the Internal Revenue Code. It is clear from a reading of Secs. 3760(a), (b) and 3761(a) that no authority is conferred to apply other rates or to exclude taxable items. Such sections merely empower such administrative officers to settle disputes as to whether or not a tax liability exists. Congress has determined what the law shall be, but left the volume of detail involved in execution of the law to administrative officers. Genuine disputes may arise because of a difference of opinion as to the existence of a tax obligation. Settlement of such disputes was entrusted by Congress to officers who are familiar with the details of the tax claims and to determine whether facts exist which give rise to a tax obligation or an established series of facts falls within the taxing provisions which Congress has enacted. "The true distinction, therefore, is, between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." J. W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 407, 48 S.Ct. 348, 351, 72 L.Ed. 624. The grant of authority in Secs. 3760 (a), (b), and 3761(a) belongs to the latter group.

2. The uniformity clause of the United States Constitution, Art. I, Sec. 8, requires only geographic and not intrinsic uniformity, which is no more than a requirement that the same rules of liability for taxes shall apply generally throughout the United States to each subject of an indirect tax, wherever it may be found. Knowleton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969; State of Florida v. Mellon, 273 U.S. 12, 47 S.Ct. 265, 71 L.Ed. 511. The same estate tax rates are applied generally throughout the United States; opportunities to settle and compromise disputes as to existence of tax liabilities are also available to all taxpayers throughout the United States, under the existing provisions of the Internal Revenue Code. The Estate Tax Act, 26 U.S.C.A. § 800 et seq., meets this test of uniformity.

3. Congress has a wide latitude in selecting objects of taxation. Its power to tax property embraces the power to tax any of its incidents or its use or enjoyment. Fernandez v. Wiener, 326 U.S. 340, 66 S. Ct. 178, 90 L.Ed. 116. In enacting the estate tax provisions, it chose the incident of transfer of property at death for purposes of taxation. More recently, another incident, that of transfer by gift, was made the subject of taxation. It was clearly within the taxing power of Congress to impose a tax on each incident at a different rate, or to tax one and not the other, as it had done when the estate tax act was first enacted and no provision was made for taxation of transfers by gift. In the exercise of its constitutional power to lay taxes Congress may select subjects of taxation, choosing some and emitting others. Sonzinsky v. United States, 300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772. Having acted within its constitutional powers in enacting the estate and gift tax acts, the difference in rates of these two separate incidents of taxation in no manner conflicts with the uniformity clause of the United States Constitution.

4. It is settled beyond dispute that the Constitution is not self-destructive. The powers which it confers on the one hand it does not immediately take away on the other; the authority to tax which is given in express terms is not limited or restricted by the subsequent provisions of the Constitution or the Amendments thereto, especially by the due process clause of the 5th Amendment. Billings v. United States, 232 U.S. 261, 282, 34 S.Ct. 421, 58 L.Ed. 596.

5. No showing was made by plaintiff at the trial that the machinery provided to procure equalization of assessment for estate tax purposes under the estate tax provisions throughout the United States, or that the machinery set up for administration of the Act or the actual attempt to ad-

minister it, are inadequate, or that they unreasonably interfere with administration of estates.

6. A tax which on its fact purports to be an exercise of the taxing power is no less a "tax" because it is burdensome, or because it has a regulatory effect. Every tax is in some measure regulatory. Inquiry into the hidden motives which may move Congress to exercise a power constitutionally conferred upon it is beyond the competency of courts. Sonzinsky v. United States, supra. Constitutional power to tax has no limits and carries with it inherently power to embarrass and destroy. Louisville Provision Co. v. Glenn, D.C., 18 F.Supp. 423. Excessiveness of the tax or the fact that it allegedly encourages the practice of making transfers by gift rather than at death, are immaterial. Both the estate and gift taxes are taxing measures, within the constitutional powers of Congress.

7. None of the provisions of the Estate Tax Act attempt to control the method of disposition of estates of deceased persons, which is a function of the States. These statutory provisions merely exact a tax upon transfers at death but leave the method of disposition of the estate to be determined under the laws of the states. The case of United States v. Burnison, 339 U.S. 87, 70 S.Ct. 503, 94 L.Ed. 675, cited by plaintiff, involved a state statute which prohibited leaving property, under jurisdiction of the state, to the United States. This insant case does not involve a bequest or devise to the Government but a tax measure.

8. Provisions of the estate tax under which the federal estate taxes were assessed and collected in the estate of Janet Heitsch, deceased, are not invalid or void for any of the reasons advanced by plaintiff. Since the tax was assessed and collected under valid statutes of the United States, and plaintiff raised no other issues except that of validity of the Act, he is not entitled to a refund of any portion of the estate tax paid.

Judgment

Judgment of no cause of action for the defendant.