**ESTATE OF Charles L. RENICK, William C. Renick and Robert P. Renick, Executors, Plaintiffs**

v.

**The UNITED STATES, Defendant.**

**No. 497–81T.**

United States Court of Claims.

Aug. 25, 1982.

---

Kyler Knobbe, Cimarron, Kan., Atty. of record for plaintiff.

Paul Wright, Washington, D. C., with whom was Asst. Atty. Gen., Glenn L. Archer, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, SKELTON, Senior Judge, and NICHOLS, Judge.

ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

SKELTON, Senior Judge:

Plaintiffs, William C. Renick and Robert P. Renick, co-executors of the estate of decedent, Charles L. Renick, sue the defendant United States for the refund of $6,000 of the estate taxes paid on the estate of the decedent, due to the reduction of the unified credit against the estate tax in that amount by the Internal Revenue Service (IRS) pursuant to 26 U.S.C. § 2010(c). Plaintiffs allege that § 2010(c) is unconsti-

tutional, because it is arbitrary and capricious and violates the due process clause of the fifth amendment of the Constitution and, as applied, amounts to unequal and double taxation. The case is before us on cross-motions for summary judgment. After hearing oral argument, we hold for the defendant.

The case arises under Section 2001 of the Tax Reform Act of 1976, 26 U.S.C. § 2001 *et seq.* (the Act or statute) enacted October 4, 1976. The Act adopted a single estate and gift tax rate schedule based on cumulative lifetime transfers as well as on transfers occurring upon death. Under prior law a donor was entitled to a specific exemption of $30,000 for gift tax purposes and the estate of a decedent was entitled to a specific exemption of $60,000 for estate tax purposes. The Act abolished the specific gift tax exemption with respect to gifts made by persons after December 31, 1976, and abolished the specific estate tax exemption for the estates of persons dying in 1977 and thereafter, and replaced them with a unified credit. The unified credit is an amount applied as an offset against any federal gift and estate tax liability owed by an individual or his estate. The statute provided that the unified credit would be phased-in over a five-year transition period, beginning at $30,000 for the calendar year 1977, and rising to $47,000 for 1981 and years thereafter. As part of the transition plan, Congress created an interim period between September 8, 1976, and January 1, 1977, by the enactment of § 2010(c)[1] whereby the unified credit allowed to the estate of a decedent would be reduced 20% on all gifts made during that period where the $30,000 specific exemption, or any part thereof, allowable under prior law (§ 2521) was used for gift tax purposes. We can assume that Congress anticipated that without the reduction many gifts would be made during the interim period so that the donors could get the benefit of the $30,000 specific gift tax exemption allowable under prior law and also, upon their deaths, their estates could get the benefit of the full unified credit of $30,000 under the new law. It is obvious that the reduction in the unified credit during this period would tend to restrict or limit this windfall for many of such donors and their estates. Of course, there was no need for the reduction to be in force after December 31, 1976, because the specific gift tax exemption of $30,000 would not be available to donors making gifts in 1977 and thereafter when the unified credit would be applied.

It was in this setting that the plaintiffs' decedent, Charles L. Renick, made a gift of $100,600 to his three children on December 30, 1976, which was two days before the expiration of the interim period created by § 2010(c). On his quarterly gift tax return Renick took advantage of the $30,000 specific gift tax exemption then in effect pursuant to Section 2521 of the 1954 Internal Revenue Code, and after gift-splitting with

---

1. § 2010. Unified credit against estate tax

   (a) General rule.—A credit of $47,000 shall be allowed to the estate of every decedent against the tax imposed by section 2001.

   (b) Phase-in of $47,000 credit.—

| In the case of decedents dying in: | Subsection (a) shall be applied by substituting for "$47,000" the following amount: |
|---|---|
| 1977 | $30,000 |
| 1978 | 34,000 |
| 1979 | 38,000 |
| 1980 | 42,500 |

   (c) Adjustment to credit for certain gifts made before 1977.—The amount of the credit allowable under subsection (a) shall be reduced by an amount equal to 20 percent of the aggregate amount allowed as a specific exemption under section 2521 (as in effect before its repeal by the Tax Reform Act of 1976) with respect to gifts made by the decedent after September 8, 1976.

   (d) Limitation based on amount of tax.—The amount of the credit allowed by subsection (a) shall not exceed the amount of the tax imposed

his wife, paid a gift tax in the amount of $964.50. Thereafter, Renick died on August 13, 1977.

Since the 1976 gift was made within three years of his death, the value of that gift was included in Renick's gross estate as a gift made in contemplation of death under § 2035 which plaintiffs do not contest.[2] The tax return filed on Renick's estate claimed the maximum unified credit of $30,000 against the estate and gift tax pursuant to 26 U.S.C. § 2010(b) for decedents dying in 1977. In addition, the $964.50 in taxes paid on the 1976 gift was credited against the estate tax. In the course of an estate tax audit, the Internal Revenue Service, pursuant to § 2010(c), disallowed $6,000 of the unified credit claimed by the estate, thereby reducing the unified credit by twenty percent to $24,000.

On August 27, 1977, one of the plaintiffs filed a claim seeking a refund of $6,000 for the disallowed credit. By letter dated September 29, 1980, the IRS disallowed the refund claim, whereupon the co-executors timely brought suit on behalf of the estate for the recovery of the amount of the disallowed credit.

The plaintiffs contend that § 2010(c) is unconstitutional because its application amounts to double taxation. They claim that when the gift was included in the decedent's estate under § 2035 and taxed accordingly and later his estate's unified credit was reduced 20% by reason of § 2010(c), the property was taxed twice, once for estate tax purposes at regular estate tax rates, and again as a gift by the reduction of the unified credit. They argue that it is a fundamental principle of taxation that the same property shall not be subject to a double tax, payable by the same party, either directly or indirectly.

■ It is well established that double taxation is not unconstitutional *per se*. *See, e.g., Hellmich v. Hellman*, 276 U.S. 233, 48 S.Ct. 244, 72 L.Ed. 544 (1928); *King v. United States*, 79 F.2d 453 (4 Cir. 1935); *Aluminum Co. of America v. United States*, 67 F.2d 172 (3 Cir. 1933), *cert. denied*, 291 U.S. 666, 54 S.Ct. 441, 78 L.Ed. 1057 (1934); *Packard Motor Car Co. v. United States*, 69 Ct.Cl. 570, 39 F.2d 991, *cert. denied*, 282 U.S. 848, 51 S.Ct. 27, 75 L.Ed. 752 (1930); and cases cited. In *Hellmich v. Hellman*, *supra*, the Supreme Court stated:

> When * * * Congress has clearly expressed its intention, the statute must be sustained even though double taxation results. See *Patton v. Brady*, 184 U.S. 608, 46 L.Ed. 713, 22 Sup.Ct.Rep. 493; *Cream of Wheat Co. v. Grand Forks County*, 253 U.S. 325, 330, 64 L.Ed. 931, 934, 40 Sup.Ct.Rep. 558 [560] 276 U.S. at 238, 48 S.Ct. at 246, 72 L.Ed. at 547.

■ In the instant case Congress' intention regarding gift and estate taxes was clearly shown by its enactment of § 2010(c). There is nothing to indicate that it was unaware of the possibility that a donor might make a gift during the interim period and that the unified credit allowable to

by section 2001. Added Pub.L. 94–455, Title XX, § 2001(a)(2), Oct. 4, 1976, 90 Stat. 1848.

**2.** 26 U.S.C. § 2035 (current version at 26 U.S.C. § 2035(a) (1976)), provided:

§ 2035. Transactions in contemplation of death

(a) General rule.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise in contemplation of his death.

(b) Application of general rule.—If the decedent within a period of 3 years ending with the date of his death (except in a case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death. Aug. 16, 1954, c.736, 68A Stat. 381; Oct. 16, 1962, Pub.L. 87–834, § 18(a)(2)(C), 76 Stat. 1052, 26 U.S.C. § 2035(a), (b) (1954), *as amended*.

him would be reduced under the statute, and that he might also die within three years after making the gift and by reason thereof his gift would be included in his estate for tax purposes.

Since the intention of Congress is expressed by the statute, the fact that its application may result in some degree of double taxation in the instant case, does not render it unconstitutional. *Hellmich v. Hellman, supra.*

Plaintiffs also claim that § 2010(c) violates the due process clause of the fifth amendment, because it is arbitrary and capricious and results in unequal taxation among taxpayers. The Supreme Court discussed the limited applicability of the due process clause to tax statutes in *A. Magnano Co. v. Hamilton*, 292 U.S. 40, 54 S.Ct. 599, 78 L.Ed. 1109 (1934) as follows:

Except in rare and special instances, the due process of law clause contained in the Fifth Amendment is not a limitation upon the taxing power conferred upon Congress by the Constitution. *Brushaber v. Union P. R. Co.*, 240 U.S. 1, 24, 60 L.Ed. 493, 504, 36 S.Ct. 236 [244], L.R.A. 1917D, 414 Ann.Cas. 1917B, 713.

\*　　\*　　\*　　\*　　\*　　\*

That clause is applicable to a taxing statute such as the one here assailed only if the act be so arbitrary as to compel the conclusion that it does not involve an exertion of the taxing power, but constitutes, in substance and effect, the direct exertion of a different and forbidden power, as, for example, the confiscation of property. Compare *M'Culloch v. Maryland*, [17 U.S.] 4 Wheat. 316, 423, 4 L.Ed. 579, 605; *Child Labor Tax Case (Bailey v. Drexel Furniture Co.)* 259 U.S. 20, 37 et seq., 66 L.Ed. 818, 819, 42 S.Ct. 449 [450], 21 A.L.R. 1432; *McCray v. United States*, 195 U.S. 27, 60, 49 L.Ed. 78, 97, 24 S.Ct. 769 [778], 1 Ann.Cas. 561; *Brushaber v. Union P. R. Co.* supra, (240 U.S. 24, 25, 60 L.Ed. 504, 36 S.Ct. 236 [244], L.R.A. 1917D, 414, Ann.Cas. 1917B, 713); *Henderson Bridge Co. v. Henderson City*, 173 U.S. 592, 614, 615, 43 L.Ed. 823, 831, 19 S.Ct. 553 [561, 562]; *Nichols v.*

*Coolidge*, 274 U.S. 531, 542, 71 L.Ed. 1184, 1192, 47 S.Ct. 710 [713], 52 A.L.R. 1081, 292 U.S. at 44, 54 S.Ct. at 601, 78 L.Ed. at 114.

In *Fernandez v. Weiner*, 326 U.S. 340, 66 S.Ct. 178, 90 L.Ed. 116 (1945), the Supreme Court held that:

It has long been settled that an Act of Congress which on its face purports to be an exercise of the taxing power, is not any the less so because the tax is burdensome or tends to restrict or suppress the thing taxed. In such a case it is not within the province of courts to inquire into the unexpressed purposes or motives which may have moved Congress to exercise a power constitutionally conferred upon it. *Sonzinsky v. United States*, 300 U.S. 506, 513, 514, 81 L.Ed. 772, 775, 776, 57 S.Ct. 554, [555, 556], and cases cited. 326 U.S. at 362, 66 S.Ct. at 189, 90 L.Ed. at 134.

*See also, Heitsch v. Kavanagh*, 97 F.Supp. 749 (E.D.Mich.1951), *aff'd*, 200 F.2d 178 (6 Cir. 1952), *cert. denied*, 345 U.S. 939, 73 S.Ct. 829, 97 L.Ed. 1365 (1953). As stated by Judge Learned Hand in *Neuss, Hesslein & Co. v. Edwards*, 30 F.2d 620, 621 (2 Cir.), *cert. denied*, 279 U.S. 872, 49 S.Ct. 513, 73 L.Ed. 1008 (1929), "the mere inequality of incidence has never been held enough."

Section 2010(c) appears on its face to be a valid exercise by Congress of the taxing power conferred on it by the Constitution. It is not within our province to invalidate a statute which is the result of a power constitutionally conferred on Congress. The fact that the statute may result in an unequal imposition or incidence of taxes does not render it unconstitutional as a violation of the due process clause of the fifth amendment. *See Lionberger v. United States*, 178 Ct.Cl. 151, 371 F.2d 831, *cert. denied*, 389 U.S. 844, 88 S.Ct. 91, 19 L.Ed.2d 110 (1967). Furthermore, the plaintiffs have failed to prove that the statute is arbitrary or capricious, or that it does not involve a proper exercise of the taxing power vested in Congress.

We conclude that the statute and its application are valid under the Constitution.

Plaintiffs further contend that since the 1976 gift was included in Renick's estate, for estate tax purposes, the court should interpret § 2010(c) under the principles of equity and reasonableness so that the reduction in the unified credit allowable to his estate due to that gift is restored.

■ Generally, the language of revenue statutes should be interpreted, if possible, in accordance with its ordinary and everyday meaning. *E.g., Malat v. Riddell*, 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966); *Hanover Bank v. Commissioner*, 369 U.S. 672, 82 S.Ct. 1080, 8 L.Ed.2d 187 (1962); *Crane v. Commissioner*, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947). In *Gould v. Gould*, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211 (1917), the Supreme Court stated:

> In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen. *United States v. Wigglesworth*, 2 Story, 369, Fed. Cas.No. 16,690; *American Net & Twine Co. v. Worthington*, 141 U.S. 468, 474, 35 L.Ed. 821, 824, 12 Sup.Ct.Rep. 55 [57]; *Benziger v. United States*, 192 U.S. 38, 55, 48 L.Ed. 331, 338, 24 Sup.Ct.Rep. 189 [195]. 245 U.S. at 153, 38 S.Ct. at 53, 62 L.Ed. at 213.

The argument that the court should interpret a tax statute more equitably has been raised *and rejected* many times by the courts. *See, e.g., Deputy v. DuPont*, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940); *Home Mutual Insurance Co. v. Commissioner*, 639 F.2d 333 (7 Cir. 1980), *cert. denied*, 451 U.S. 1017, 101 S.Ct. 3005, 69 L.Ed.2d 388 (1981); *Hamrick v. United States*, 218 Ct.Cl. 193, 585 F.2d 1015 (1978). As Justice William O. Douglas observed in *Deputy v. DuPont, supra*:

> * * * we cannot sacrifice the "plain, obvious and rational meaning" of the statute even for "the exigency of a hard case." See *Lynch v. Alworth-Stephens*

*Co.*, 267 U.S. 364, 370, 69 L.Ed. 660, 662, 45 S.Ct. 274 [275]. 308 U.S. at 498, 60 S.Ct. at 368, 84 L.Ed. at 424.

■ We rejected the argument that we should interpret manufacturers' excise tax statutes under equitable principles in *F & D Trading Corp. v. United States*, 217 Ct.Cl. 472, 580 F.2d 414 (1978) where we stated:

> Unfortunately for the plaintiffs' contention on this point, the court does not have the prerogative of ignoring the plain language used by Congress in order to achieve a result which (according to the plaintiffs) would be more rational and fair than that flowing from the application of the literal statutory language. 217 Ct.Cl. at 477, 580 F.2d at 418.

We held in *Hamrick v. United States, supra*:

> Obviously, express and intended provisions of the Internal Revenue Code cannot be disregarded by courts merely because the judges can conceive of some solution which seems "fairer" to them. *See, e.g., F & D Trading Corp. v. United States, supra*, 217 Ct.Cl. at 477, 580 F.2d at 418. Congress is the forum for such rectifications. 218 Ct.Cl. at 203, 585 F.2d at 1021.

The general principles expressed in these cases are equally applicable to the gift and estate tax statutes involved in the instant case.

■ The plain language and legislative design of § 2010(c) show that Congress intended the reduction to the unified credit to occur in *all* cases where gifts were made during the transition period and the specific gift tax exemption of $30,000 allowable under prior law, or any part thereof, was taken by the donors. The court cannot imply an exception to the statute merely because it would be more reasonable or more equitable to do so. Any such change or modification of § 2010(c) must be left to Congress. *See Goodwin v. United States*, 198 Ct.Cl. 88, 458 F.2d 108 (1972).

■ In addition, it was within the decedent's power to avoid the application of § 2010(c) to his gift. Since the statute was

enacted on October 4, 1976, over two months prior to the date of the gift on December 30, 1976, Renick could have chosen to make the gift before September 9, 1976, or after December 31, 1976. Thus, the decedent was afforded a reasonable means or choice to avoid the application of § 2010(c) to his gift. *See Ewing v. Rountree,* 228 F.Supp. 137 (M.D.Tenn.1964), *aff'd,* 346 F.2d 471 (6 Cir.), *cert. denied,* 382 U.S. 918, 86 S.Ct. 292, 15 L.Ed.2d 233 (1965). Had Renick chosen to make the gift after December 31, 1976, however, he would not have benefited from the specific gift tax exemption under the prior law. Even though his death was beyond his control, Renick himself decided when to make the gift and voluntarily chose to make it during the transition period. Since he made the gift after the Act was enacted, he was charged with notice that his allowable unified credit would be reduced.

The plaintiffs point to the following statement in the House Committee Report on the bill, which the Conference Committee "agree[d] with and incorporate[d]," S.Conf.Rep.No.1236, 94th Cong., 2d Sess. 607, *reprinted in* 1976–3(3) C.B. 807, 957; H.R.Conf.Rep.No.1515, 94th Cong., 2d Sess. 607, *reprinted in* 1976 U.S.Code Cong. & Ad.News 4118, 4246: "Thus, in the case where a donor had benefited from the use of the full $30,000 gift tax specific exemption under present law, the maximum unified credit allowable would be reduced by $6,000." H.R.Rep.No.1380, 94th Cong., 2d Sess. 16, *reprinted in* 1976 U.S.Code Cong. & Ad.News 3356, 3370. They contend that Congress intended to reduce the unified credit only if the taxpayer had benefited from the use of the $30,000 gift tax exemption, that the decedent had not so benefited, and that the statutory reduction of the credit therefore is inapplicable.

When the decedent made the gift, however, it appeared that he would benefit from the $30,000 exclusion. In any event, this single item of legislative history, turning on the passing use of the word "benefited," does not warrant departing from the unambiguous language of the statute.

We conclude that the plaintiffs have not shown that § 2010(c) should be construed so that the reduction in the unified credit is restored when the gift is included in the gross estate pursuant to § 2035, and we decline to do so.

We hold that 26 U.S.C. § 2010(c) is a valid exercise of the taxing powers vested in Congress, and that it is not unconstitutional as double taxation or as a violation of due process under the fifth amendment.

Accordingly, the motion for summary judgment of the plaintiffs is denied and the cross-motion for summary judgment of the defendant is granted, and plaintiffs' petition is dismissed.