## ESTATE OF JAMES O. GAWNE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 13172–81.     Filed March 3, 1983.

*Ronald D. Aucutt* and *John M. Bixler*, for the petitioner.
*Warren P. Simonsen* and *Carolyn M. Parr*, for the respondent.

### OPINION

TIETJENS, *Judge*: Respondent determined a deficiency of $2,039 in petitioner's Federal estate tax. The sole issue for decision is whether under section 2010(c)[1] the decedent's unified credit should be reduced because decedent consented under section 2513 to use part of his section 2521 specific exemption for a gift made by his wife between September 8, 1976, and January 1, 1977.

This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and attached exhibits are incorporated herein by reference.

Petitioner's mailing address when the petition was filed was Washington, D.C. The coexecutors of the estate were located in Washington, D.C., and Sewickley, Pa. Petitioner timely filed its Federal estate tax return with the Internal Revenue Service at the Washington, D.C., Field Office of the Baltimore District. At the time of his death, decedent James O. Gawne (hereinafter Gawne or decedent) together with his wife, Jane, were residents of Washington, D.C.

Decedent's wife made various gifts after September 8, 1976,

---

[1]All statutory references are to the Internal Revenue Code of 1954 as amended and in effect for the taxable years at issue, unless otherwise stated.

but before January 1, 1977. On timely filed gift tax returns for the quarter ending December 31, 1976, decedent and his wife each consented to consider those gifts as made one-half by the decedent and one-half by his wife, pursuant to section 2513. In computing the amount of taxable gifts on his gift tax return, decedent deducted $18,389.38. This amount represented his remaining specific exemption allowed under section 2521. The entire specific exemption of $18,389.38 claimed by decedent was attributable to gifts of property owned by his wife. The rest of decedent's specific exemption had been used on prior gift tax returns with respect to gifts made before September 9, 1976.

Gawne died on August 22, 1977. His wife died on February 10, 1980. Petitioner deducted from the gross estate tax a unified credit of $30,000, as allowed by section 2010(a) and (b), and did not adjust the unified credit under section 2010(c).

Petitioner contends that no section 2010(c) adjustment is necessary in its case because that section provides for an adjustment to the unified credit only "with respect to gifts made by the decedent." Petitioner argues that gifts "considered" made by the decedent under the gift tax provisions of section 2513(a)(1) are not "gifts made by the decedent" for purposes of the estate tax. Thus, petitioner maintains that for estate tax purposes, the gifts "made by" decedent's spouse should not reduce the amount of the unified credit available to decedent's estate.

Respondent contends that section 2010(c) should be read to require a reduction of petitioner's unified credit by 20 percent of the amount allowed to decedent as a specific exemption for gifts that were considered made by him after September 8, 1976, and before January 1, 1977.

We agree with respondent that section 2010(c) requires the unified credit to be reduced by 20 percent of the aggregate amount allowed as a specific exemption for gifts that were "considered as made" by the decedent after September 8, 1976.

Section 2010, as first enacted by the Tax Reform Act of 1976[2] provided, in relevant part:

---

[2]Pub. L. 94-455, 90 Stat. 1520, 1848.

(a) GENERAL RULE.—A credit of $47,000 shall be allowed to the estate of every decedent against the tax imposed by section 2001.

(b) PHASE-IN OF $47,000 CREDIT.—

| In the case of decedents dying in: | Subsection (a) shall be applied by substituting for '$47,000' the following amount: |
|---|---|
| 1977 ........................................................ | $30,000 |

\* \* \* \* \* \* \*

(c) ADJUSTMENT TO CREDIT FOR CERTAIN GIFTS MADE BEFORE 1977.—The amount of the credit allowable under subsection (a) shall be reduced by an amount equal to 20 percent of the aggregate amount allowed as a specific exemption under section 2521 (as in effect before its repeal by the Tax Reform Act of 1976) *with respect to gifts made by the decedent* after September 8, 1976. [Emphasis added.]

Respondent interprets section 2010(c) to include all gifts made and considered to be made pursuant to section 2513[3] for which the specific exemption was claimed under section 2521.[4]

The statutory interpretations of section 2010(c) by both petitioner and respondent involve their respective readings of the plain meaning of the statute and of the legislative history.

We do not think section 2010(c) precludes by its "plain

---

[3]Sec. 2513 provides, in part:

(a) CONSIDERED AS MADE ONE-HALF BY EACH.—

(1) IN GENERAL.—A gift made by one spouse to any person other than his spouse shall, for the purposes of this chapter, be considered as made one-half by him and one-half by his spouse, but only if at the time of the gift each spouse is a citizen or resident of the United States. \* \* \*

[4]Sec. 2521, in effect when the gifts at issue in the present case were made, provided:

In computing taxable gifts for a calendar quarter, there shall be allowed as a deduction in the case of a citizen or resident an exemption of $30,000, less the aggregate of the amounts claimed and allowed as a specific exemption in the computation of gift taxes for the calendar year 1932 and all calendar years and calendar quarters intervening between that calendar year and the calendar quarter for which the tax is being computed under the laws applicable to such years or calendar quarters.

Sec. 25.2521–1(b), Gift Tax Regs., provided:

(b) No part of a donor's lifetime specific exemption of $30,000 may be deducted from the value of a gift attributable to his spouse where a husband and wife consent, under the provisions of section 2513, to have the gifts made during a calendar quarter or calendar year considered as made one-half by each of them. The "gift-splitting" provisions of section 2513 do not authorize the filing of a joint gift tax return nor permit a donor to claim any of his spouse's specific exemption. For example, if a husband has no specific exemption remaining available, but his wife does, and the husband makes a gift to which his wife consents under the provisions of section 2513, the specific exemption remaining available may be claimed only on the return of the wife with respect to one-half of the gift. The husband may not claim any specific exemption since he has none available.

meaning" gifts considered to be made by the decedent for which a specific exemption was claimed. On the contrary, at first reading, we consider the phrase "gifts made by the decedent" a term of art parallel to other estate and gift tax provisions, simply intending to encompass taxable gifts with respect to a donor or considered donor.[5]

Prior to the Tax Reform Act of 1976, as respondent correctly states, we held that the value of all gifts considered made by a taxpayer pursuant to the gift-splitting provisions of section 2513 should be aggregated with all other gifts actually made by the taxpayer to determine the gifts subject to tax under the gift tax provisions. *Norair v. Commissioner*, 65 T.C. 942, 947 (1976), affd. 556 F.2d 574 (4th Cir. 1977); *Ingalls v. Commissioner*, 40 T.C. 751, 755 (1963), affd. 336 F.2d 874 (4th Cir. 1964). Petitioner concedes that section 2513 dictates this treatment with respect to the gift tax provisions of the Code. Petitioner, however, maintains that an express directive from Congress is required before section 2513 would have a parallel effect for the purposes of section 2010(c) in the estate tax provisions of the Code.

In effect, petitioner agrees that for the purposes of the gift tax chapter, the provision parallel to section 2010(c), section 2505(c), would require the available unified credit for gifts made after December 31, 1976, to be reduced by 20 percent of the amount allowed as a specific exemption with respect to gifts made after September 8, 1976. Thus, if Gawne had made another gift in 1977 for which gift tax returns had to be filed, petitioner would calculate the gift tax owed by reducing the unified credit by 20 percent of the amount allowed as a specific exemption for gifts considered as made by Gawne between September 8, 1976, and January 1, 1977. Petitioner argues that Congress did not create a logically parallel section in enacting section 2010(c), and instead intended there to be a different unified credit for estate tax purposes.

The legislative history of section 2010(c) does not make a clear distinction between gifts made by decedent and gifts considered to be made by the decedent; however, the history of the unified credit provisions does suggest that Congress was

---

[5]See, e.g., secs. 2101(c)(1), 2501(a)(1), 2505(c).

concerned with the taxation of lifetime transfers of any sort in enacting the Tax Reform Act of 1976. The Joint Committee on Taxation expressed this view, echoing language from both the House and Senate:

> Under prior law, there was a substantial disparity of treatment between the taxation of transfers during life and transfers at death. * * *
>
> As a matter of equity, the Congress believed the tax burden imposed on transfers of the same amount of wealth should be substantially the same whether the transfers are made both during life and at death or made only upon death. * * *
>
> The Congress believed that it was desirable to reduce the disparity of treatment between lifetime and deathtime transfers through the adoption of a single unified estate and gift tax rate schedule * * * [Staff of Joint Comm. on Taxation, 94th Cong., 2d Sess., General Explanation of the Tax Reform Act of 1976, at 526, 1976–3 C.B. (Vol. 2) 1, 538.]

With respect to section 2010(c), the Joint Committee made the following statement:

> The unified credit allowable is to be reduced by an amount equal to 20 percent of the amount allowed as a specific exemption under prior law for gifts made after September 8, 1976, and before January 1, 1977. However, the unified credit is not to be reduced for any amount allowed as a specific exemption for gifts made prior to September 9, 1976. * * * [General Explanation of the Tax Reform Act of 1976, *supra*, 1976–3 C.B. (Vol. 2) at 543.]

Compare S. Rept. 94–1236, at 607–608 (1976), 1976–3 C.B. (Vol. 3) 807, 957–958, and Staff of Joint Comm. on Taxation, 94th Cong., 2d Sess., Summary of the Tax Reform Act of 1976, at 84, 1976–3 C.B. (Vol. 1) 411, 508, where substantially similar statements are made.

Petitioner argues that the congressional language in the House report of the Committee on Ways and Means supports its interpretation because of references made specifically to a "donor." This report, similar to the one quoted above, provides:

> As a transitional rule, the unified credit allowable is to be reduced by an amount equal to 20 percent of the amount allowed as a specific exemption in computing taxable gifts under present law. Thus, in the case where *a donor* had benefited from the use of the full $30,000 gift tax specific exemption under present law, the maximum unified credit allowable would be reduced by $6,000. [H. Rept. 94–1380, at 16, 1976–3 C.B. (Vol.3) 735, 750; emphasis supplied.]

Petitioner argues that this report indicates Congress had in view only the benefits of the gift tax exemption obtained by the actual donor of the gift and contends that because decedent's spouse was the donor, decedent's use of the unified credit is not encompassed by the intent of section 2010(c).

We do not agree with petitioner's interpretation of the legislative history. We think respondent's reading of the legislative history, that section 2010(c) was intended by Congress to apply to all gifts made after September 8, 1976, is correct. The phrase "for gifts made" stands alone in the legislative history, unmodified by reference to "donor," or "considered donor." Additionally, it appears that Congress was concerned with potential abuses that could occur between the time of the enactment of the Tax Reform Act of 1976 and its effective date. Section 2010(c) thus seems to have been created as a transitional rule to stem the possibility of taxpayers' intentionally taking double tax benefits.

Petitioner maintains that Congress has in other estate tax sections referred to the gift-splitting provisions, and the failure to coordinate section 2010(c) with section 2513 specifically implies that Congress did not intend to do so.

We do not agree that this instance demands particular coordination. When coordinating sections 2035 and 2513, for example, Congress sought to clarify a particularly thorny problem that arose in the split gift area, when an actual donor died within 3 years of making a gift that had been considered to be one-half made by the donor's spouse.[6]

Based on a reading of the statutory language and the legislative history of section 2010(c), we hold that this transitional rule applies to gifts considered to be made under section 2513 and, therefore, 20 percent of the amount allowed as a specific exemption for gifts considered to be made by Gawne

---

[6]Cf. Rev. Rul. 82–198, 1982–47 I.R.B. 7. Sec. 2010(c) does not appear to contain an analogous degree of difficulty. Indeed, the only case we have discovered that has considered this section to date was an unsuccessful attack on its constitutionality. *Estate of Renick v. Commissioner*, 231 Ct. Cl. ___ , 687 F.2d 371 (1982).

between September 8, 1976, and January 1, 1977, will be used to reduce the $30,000 unified credit available to petitioner.

*Decision will be entered for the respondent.*