**SOUTH SHORE MARINA, INC., Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS of the State of Indiana, Respondent.**

No. 64T05–8710–TA–00053.

Tax Court of Indiana.

Aug. 25, 1988.

Frederick M. Cuppy, David Cerven, Phillip A. Norman, Burke, Murphy, Costanza & Cuppy, Merrillville, for petitioner.

Linley E. Pearson, Atty. Gen. by Joel Schiff, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

The petitioner, South Shore Marina, Inc., appeals the final determination of the respondent, State Board of Tax Commissioners, which found South Shore liable for personal property tax on boats claimed to be owned, held, possessed, or controlled by third parties.

South Shore operated a marina in Porter County, Indiana. As part of its operations, South Shore leased out storage space for boats and other personal property. South Shore's relationship with boat owners was governed by a storage agreement, which stated that the boat owner retained possession of any personal property which was stored on South Shore's premises. The boat owners had unlimited access to their property. The storage agreement had blanks for the owner's name, address, phone number, signature, date, and the amount of storage space required.

South Shore filed its personal property tax returns for 1986, listing on Form 103–N all personal property it leased on March 1. It did not file Form 103–N for any of the boats or other property that were stored on its premises under the storage agreements.

In March 1987, the State Board notified South Shore of a review of its personal property assessment. At the initial hearing on April 15, 1987, South Shore's president, Peter Zakutansky, brought South Shore's 1985 federal tax returns and the January and February 1986 sales and ledger sheets. Zakutansky requested a definition of business personal property and a copy of the hearing officer's questionnaire. The hearing officer requested Zakutansky to return on April 28 with the storage agreements.

Zakutansky presented the storage agreements to the hearing officer at the April 28 hearing. Of the 244 documents submitted, all included the name of the owner of stored property, 243 included a signature, 222 included an address, 217 included a phone number, and 150 were dated. The documents did not include a description of the property to be stored, the value of such property, or the location of the storage space.

The hearing officer attempted to eliminate certain boat owners from the storage agreements by checking the Lake and Porter County Assessor offices for the boat owners' Forms 101. Using a list of boats compiled for a 1985 hearing, the hearing officer found thirty-five new agreements between 1985 and 1986. She added these names to the 1985 list. Because the stor-

age agreements lacked information as to the date of storage, the description of particular property, or the specific storage space, the hearing officer decided to estimate an assessment. Using a photograph of the South Shore premises taken in May 1986, the hearing officer counted sixty-five boats on South Shore's premises. Using information on the size and general use of South Shore's buildings taken from the County Assessor's office, the hearing officer estimated that an additional fifty-four boats could be stored inside the buildings. The hearing officer also counted twenty-one unseaworthy boats on the property, as well as twenty-three campers and trailers.

The hearing officer estimated the average cost of a boat to be $4725 after consulting a guide book for used boats. For the unseaworthy boats, she used ten percent of the average cost for the salvage value. She mailed work sheets and a letter to South Shore, explaining the changes she had made and informing it that an additional hearing was available upon request. Another hearing was held on July 14, 1987. Zakutansky protested the assessment, stating that he did not understand it and did not know how the figures had been determined. He did not specify any inaccuracies or offer any evidence of different values. The hearing officer explained how she arrived at her proposed assessment and gave him copies of her materials. The State Board issued its determination adopting the hearing officer's recommendation. This appeal followed.

The issues presented by this case are as follows:

1) Is South Shore precluded from challenging the imposition of tax under IC 6–1.1–2–4(b) because it failed to file Form 103–N with its 1986 business personal property tax returns;

2) Was the State Board's assessment arbitrary and capricious because South Shore did not hold, possess, or control the property assessed;

3) Was the State Board's assessment supported by substantial evidence as it relates to:

a) the fifty-four boats alleged to be stored in various buildings;

b) the value of seaworthy and unseaworthy boats stored on the property.

South Shore argues that the State Board's assessment under IC 6–1.1–2–4(b) was arbitrary and capricious because South Shore did not hold, possess, or control any of the boats assessed to it. It further argues that even if the State Board's assessment was properly imposed under IC 6–1.1–2–4, the assessment was not supported by substantial evidence.

The State Board responds that South Shore is precluded from challenging the imposition of tax under IC 6–1.1–2–4(b) because South Shore failed to file Form 103–N with its personal property tax returns. It argues that imposition of tax under IC 6–1.1–2–4(b) was not an arbitrary and capricious decision because South Shore failed to provide adequate information relating to identity of the proper taxpayer and identification of that taxpayer's specific property. The State Board further argues that the assessment was supported by substantial evidence insofar as the hearing officer used the best information available.

I.

As a preliminary question, the State Board argues that South Shore may not challenge the imposition of tax under IC 6–1.1–2–4(b) on the grounds that it does not own, hold, possess, or control the boats because it failed to file Form 103–N with its tax returns. IC 6–1.1–2–4 provides:

(a) The owner of any tangible property on the assessment date of a year is liable for the taxes imposed for that year on the property.

(b) A person holding, possessing, controlling, or occupying any tangible property on the assessment date of a year is liable for the taxes imposed for that year on the property unless:

(1) he establishes that the property is being assessed and taxed in the name of the owner; or

(2) the owner is liable for the taxes under a contract with that person.

When a person other than the owner pays any property taxes as required by this section, that person may recover the amount paid from the owner, unless the parties have agreed to other terms in a contract.

The State Board argues that in *State Board of Tax Commissioners v. South Shore Marina* (1981), Ind.App., 422 N.E.2d 723 [hereinafter *South Shore I*], the Court of Appeals held that the marina's refusal to submit Form 103–N precluded the marina from challenging the assessment on the grounds that it did not own, hold, possess, or control the boats.

In *South Shore I*, the marina failed to file Form 103–N for boats stored on its property. Form 103–N aided the State Board in assessing property held, possessed, or controlled by a third party to its true owner. The State Board requested a list of the stored boats and the names of the boat owners. The marina refused, insisting that it need not supply customer lists because it did not actually hold, possess, or control the stored boats.

The marina submitted a blank storage agreement in support of its argument. According to the storage agreement, the boat owner retained the right of possession of the boat and the marina merely leased space to the boat owner. Under the terms of the storage agreement, the marina never held, possessed, or controlled the boats.

The State Board assessed the value of the boats to the marina. On appeal, the marina challenged the State Board's determination that the marina held, possessed, or controlled the boats on the grounds that it was arbitrary and capricious. The court refused to address the issue, citing the principle that a party may not take advantage of those errors which are the natural consequence of the party's neglect or misconduct. *Id.* at 730.

The court reasoned that due to the nature of the business, the marina was the apparent owner or possessor of the boats stored on its property. Upon the marina's refusal to provide any evidence of the true owner, the State Board's only alternative was to assess the boats to the apparent owner or possessor, namely the marina. The court concluded that the assessment was the natural consequence of the marina's failure to submit evidence of nonliability. *Id.* at 730, 734.

■ In this case, the State Board's interpretation of *South Shore I* is too restrictive. Mere failure to file Form 103–N did not preclude the marina from challenging the assessment on the grounds that it did not own, hold, possess, or control the boats. The marina's repeated refusal to divulge any information by which the State Board could determine who actually did own, hold, possess, or control the boats was the reason for the court's decision in *South Shore I.* Here, South Shore did not file Form 103–N, but it did provide the documents requested by the hearing officer. South Shore has not taken advantage of errors which were the natural consequence of its own misconduct. It has a legitimate challenge to the State Board's determination that South Shore held, possessed, or controlled the boats in question.

## II.

South Shore argues that the State Board's imposition of tax under IC 6–1.1–2–4 was arbitrary and capricious because South Shore did not have a legal right to hold, possess, or control boats under the terms of the storage agreements. The State Board argues that the assessment was proper because the information contained in the storage agreements did not provide an adequate basis from which it could determine who, other than South Shore, the true owner was.

■ South Shore, as a marina, is the apparent owner or possessor of boats stored on its property. The burden is on the apparent owner or possessor to establish nonliability. *Id.* at 735. South Shore submitted the storage agreements in an attempt to establish nonliability.

■ Assuming that the storage agreements proved that South Shore had no legal right to hold, possess, or control the boats, South Shore nevertheless failed to satisfy the burden of proof because the

storage agreement did not contain information needed to correlate particular boats or other property in specific locations with particular owners on March 1, 1986. The hearing officer had a photograph of sixty-five boats on South Shore's premises. South Shore was the apparent owner or possessor of these boats. *Id.* The hearing officer could not identify the boats with particular owners given the information in the storage agreement. The absence of such information in South Shore's storage agreements does not relieve it of its burden under the statute. The hearing officer had no alternative but to make a summary assessment of the boats to the apparent owner, South Shore. The assessment was reasonable in light of the facts and circumstances of this case. Therefore, the State Board's decision was not arbitrary and capricious.

### III.

South Shore argues that even if the State Board was allowed, under IC 6–1.1–2–4, to attribute boats to South Shore that it neither owned nor possessed, the State Board's assessment is not supported by substantial evidence as the assessment relates to the boats stored in buildings, the seaworthy boats stored outside the buildings, and the unseaworthy boats. The State Board argues that the assessment is proper because the hearing officer used the best information available and South Shore offered no evidence to the contrary.

South Shore claims that the assessment of fifty-four boats inside the storage buildings is without any factual basis. In determining this part of the assessment, the hearing officer took the size of the buildings and estimated the number of boats which could be stored inside. The hearing officer never saw these boats and was never informed, in any way, of the existence of boats inside the storage buildings.

On the other hand, South Shore never specifically claimed during the hearing that such an estimate was inaccurate. South Shore never denied that any boats were stored there.

The hearing officer was entitled to make a summary assessment once South Shore failed to provide sufficient evidence of who was the actual owner, possessor, holder, or controller. *Id.* at 734. In *South Shore I*, the court held that the assessment was supported by substantial evidence when the evidence clearly established that fifty boats were on the marina's property on March 1. Such evidence consisted of the hearing officer's testimony and affidavit that the boats were, indeed, on the property on March 1. *Id.* at 731.

In this case, the hearing officer had no evidence of the existence of any boats in any buildings. She merely estimated the buildings' storage potential. This does not rise to the level of evidence necessary to satisfy the "substantial evidence" standard of review. "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison Co. v. NLRB* (1938), 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126). Otherwise, the hearing officer could simply estimate the storage potential of the entire marina and base the assessment on that estimate without ever seeing a boat. The court finds that the State Board's assessment with respect to the fifty-four boats allegedly stored inside buildings is not supported by substantial evidence.

South Shore next argues that the assessed value of the seaworthy boats and unseaworthy boats is not supported by substantial evidence. The hearing officer determined the average cost of seaworthy boats by consulting a guidebook for used boats. She gathered some information as to the make, model, and year of some of the boats by studying pictures taken in May 1986. She arrived at the value of the unseaworthy boats by taking ten percent of the average cost of the seaworthy boats as a salvage value.

South Shore did not specify at the hearing which boats were inaccurately valued. Furthermore, South Shore bases its argument on evidence not introduced at the hearing. With regard to the seaworthy boats, South Shore offered a Legislative

Services Agency report containing the average assessed value of boats in Porter and adjacent counties. With regard to unseaworthy boats, South Shore offered EPA regulations regarding their disposal. The court may not consider such evidence in determining whether the assessment is supported by substantial evidence. *State Bd. of Tax Comm'rs v. Gatling Gun Club, Inc.* (1981), Ind.App., 420 N.E.2d 1324. South Shore also argues that the assessment of the seaworthy boats is not supported by substantial evidence because the hearing officer never contacted the owners as to the value of the boats or the county treasurer's office to assure that the assessment was reasonable. No statute or regulation requires the hearing officer to do so as long as the determination she makes is based on substantial evidence.

The taxpayer has the burden of establishing the value of the property assessed. *State Bd. of Tax Comm'rs v. Traylor* (1967), 141 Ind.App. 324, 228 N.E.2d 46, 52. Since South Shore offered no evidence of value to the contrary at the hearing, the court finds that the State Board's determination of value for the seaworthy and unseaworthy boats is supported by substantial evidence.

### IV.

In conclusion, the court finds that the mere failure of South Shore to file Form 103–N does not preclude it from challenging the State Board's imposition of IC 6–1.-1–2–4. South Shore did not present evidence of nonliability sufficient to allow the State Board to determine the true owner of particular property in a specific storage space. Thus, the State Board's assessment is not arbitrary and capricious. With respect to the assessment of the fifty-four boats allegedly stored inside the buildings, the State Board's determination is not supported by substantial evidence. With respect to the valuation of the seaworthy and unseaworthy boats stored outside the buildings, the State Board's valuation is supported by substantial evidence.

It is hereby ORDERED, ADJUDGED, and DECREED that the State Board's determination is reversed in part and remanded to the State Board for further action in accordance with this opinion.

ORDERED this 25th day of August, 1988.