**STATE BOARD OF TAX COMMIS-
SIONERS Appellant (Respondent
Below),**

v.

**JEWELL GRAIN COMPANY, INC.,**
Appellee (Petitioner Below).

No. 86S00–8812–TA–981.

Supreme Court of Indiana.

July 12, 1990.

Linley E. Pearson, Atty. Gen. and Ted J. Holaday, Deputy Atty. Gen., Indianapolis, for appellant.

Steven R. Buschmann, Bushmann, Carr & Shanks, P.C., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Jewell Grain acquired a grain elevator in Steuben Township, Warren County, during June 1985. Jewell filed its first Indiana business tangible personal property tax return for the elevator on May 15, 1986. On that return, Jewell listed the grain it owned, but it failed to file a Form 103–N indicating property that was in its possession but owned by someone else. In October 1986, the State Board of Tax Commissioners audited Jewell. The Board requested that Jewell provide the information that should have been on the Form 103–N. Jewell did so.

The Board compared the information provided by Jewell with personal property tax returns filed in Steuben Township. The Board deducted government-owned grain, grain located in Illinois, and grain which had been reported by farmers in Steuben Township from the amounts and values Jewell provided, and it increased Jewell's assessment accordingly. The Board did not compare the list with personal property tax returns filed outside of Steuben Township and therefore did not give Jewell credit for taxes grain owners may have paid outside of Steuben Township.

Jewell appealed the Board's final assessment to the Indiana Tax Court. The Tax Court found the Board's assessment contrary to law, and remanded it for redetermination. *Jewell Grain Co. v. State Bd. of Tax Comm'rs* (1988), Ind.Tax, 524 N.E.2d 49.

The Board now appeals to this Court. It claims The Tax Court erred by looking at the applicable statutes and regulations in isolation and failing to give effect to overall meaning, and by looking for authority requiring assessment rather than authority permitting assessment. The Board asks us to reverse the Tax Court's determination that the State Board acted unlawfully in assessing taxes against Jewell for the grain Jewell failed to report until after it was audited.

■ Judicial review of an administrative decision is limited to whether the agency possessed jurisdiction over the subject matter, and whether the agency's decision was made pursuant to proper procedures, was based upon substantial evidence, was not arbitrary or capricious, and was not in violation of any constitutional, statutory or legal principle. *State Bd. of Tax Comm'rs v. South Shore Marina* (1981), Ind.App., 422 N.E.2d 723 [hereinafter *South Shore I*].

Given this standard of review for administrative actions we cannot say that the Board's assessment against Jewell Grain was erroneous.

I. *Was the Board's Assessment Contrary to Law.*

Liability for property tax is set forth in Chapter 2, Section 4 of the article on property taxes which reads:

(a) The owner of any tangible property on the assessment date of a year is liable for the taxes imposed for that year on the property.

(b) A person holding, possessing, controlling, or occupying any tangible property on the assessment date of a year is liable for the taxes imposed for that year on the property unless:

(1) he establishes that the property is being assessed and taxed in the name of the owner; or

(2) the owner is liable for the taxes under a contract with that person.

When a person other than the owner pays any property taxes as required by this section, that person may recover the amount paid from the owner, unless the parties have agreed to other terms in a contract.

Ind.Code § 6–1.1–2–4 (West 1989).

■ Any ambiguity in a tax-levying statute is construed against the State and in favor of the taxpayer. *State Dep't of Revenue v. Estate of Eberbach* (1989), Ind., 535 N.E.2d 1194. When a statute is clear and unambiguous, however, there is no need to apply any rules of construction other than the rule that words and phrases shall be taken in their plain, ordinary, and usual sense. *State v. Indiana–Kentucky Elec. Corp.* (1982), Ind.App., 436 N.E.2d

352, 356, *reh'g granted*, (1982), 438 N.E.2d 782.

■ We find this statute unambiguous. Under the ordinary meaning of the words chosen by the legislature, the Board has the discretion to tax either the owner or the possessor unless the possessor can prove the owner is being taxed, or the owner has accepted liability for the tax under contract.

■ The statute does not clearly indicate any order of priority. The statute does not place primary tax liability on a possessor, because its provisions allow the possessor to escape liability by establishing that the property is being assessed and taxed to the owner, and to recover the amount paid from the owner unless the parties agreed to other terms in a contract. *Empire Gas of Rochester, Inc. v. State* (1985), Ind.App., 486 N.E.2d 1036, 1041.

■ The Tax Court has permitted the use of Ind.Code § 6–1.1–2–4(b) in certain circumstances to levy an assessment against a possessor. In *State Line Elevator v. Board of Tax Comm'rs* (1988), Ind. Tax, 528 N.E.2d 501, the State Board found the operator of a grain elevator liable for business personal property tax on grain stored in elevators. The elevator appealed the final determination and attempted to claim an exemption available only to owners. The Tax Court indicated that State Line Elevator was incorrect in its assumption that the assessment was based on ownership. "The assessment was made under IC 6–1.1–2–4(b) on the basis that State Line is a possessor who has not established that 'the property is assessed and taxed in the name of the owner.'" 528 N.E.2d at 502. This reading of the statute is consistent with the provision that sets forth the assessor's recourse in the event a taxpayer fails to file.[1]

While Ind.Code § 6–1.1–2–4 requires that the holder establish that the owner has in fact been assessed, the Indiana Administrative Code provides an even simpler means for a holder to escape liability. Under the administrative rules grain in storage was to be assessed as follows:

The owner of grain shall file an assessment return declaring the assessment and liability for taxes in each taxing district where said grain was located as of March 1 of each assessment year.

Every elevator or other storage facility shall file a true and complete list of all owners to be assessed, including name and address, description, quantity, etc., for any property which it may hold, possess or control in any capacity whatsoever on the assessment date and attach same as part of its business personal property assessment return Form 103.

In the event an elevator or other storage facility does not furnish a listing of property held, possessed or controlled as of the assessment date, so as to enable the property to be assessed and taxed to the owner, then the assessor shall assess and tax said property to the elevator or other storage facility so holding, possessing or controlling the property.

Ind.Admin.Code tit. 50, r. 1–2–1(b)(3) (1988).[2] Jewell Grain did not provide the

---

1. That statute reads as follows:

    (a) In connection with the activities required by section 14 of this chapter, or if a person owning, holding, possessing or controlling any personal property fails to file a personal property return with the township assessor as required by this chapter, the township assessor may examine:
        (1) the personal property of the person;
        (2) the books and records of the person; and
        (3) under oath, the person or any other person whom the assessor believes has knowledge of the amount, identity, or value of the personal property reported or not reported by the person on a return.
    (b) After such an examination, the assessor shall assess the personal property to the person

owning, holding, possessing, or controlling that property.
    (c) As an alternative to such examination, the township assessor may estimate the value of the personal property of the taxpayer and shall assess the person owning, holding, possessing, or controlling the property in an amount based upon the estimate. Upon receiving a notification of estimated value from the township assessor, the taxpayer may elect to file a personal property return, subject to the penalties imposed by IC 6–1.1–37–7.
    Ind.Code § 6–1.1–3–15 (West 1989).

2. This regulation was repealed and superseded by Ind.Admin.Code tit. 50, r. 4.2–5–2(b)(1989) as

evidence required by statute to avoid assessment. It did not avail itself of the opportunity to avoid assessment by filing Form 103–N with its return. It provided the form only after it was audited. The Board was not under any statutory obligation to accommodate this tardy compliance. Simply stated, the Board's assessment was lawful.

## II. *Was the Board's Assessment Arbitrary and Capricious?*

An arbitrary and capricious administrative act is defined in *South Shore I* as "one which is willful and unreasonable, without consideration and in disregard of the facts or circumstances in the case." 422 N.E.2d at 727. That opinion further explains that an arbitrary and capricious act is "one without some basis which would lead a reasonable and honest person to the same conclusion." *Id.* The Tax Court found the Board's assessment to be arbitrary and capricious. We disagree.

Jewell argues that the Board disregarded two facts: (1) Jewell cooperated with the Board's audit by supplying the necessary information upon request, making it possible for the Board to assess the owners before the statute of limitations ran, and (2) the Board's assessment did not take into account taxes that owners may have paid but that were improperly filed.

### A. *Jewell's Cooperation*

■ Jewell argues that it can not be liable for the tax unless the Board has no alternative. That assertion is not supported by law. Under the Ind.Code § 6–1.1–2–4 Jewell can avoid liability by establishing that the property is taxed to the owner. The regulations allow the holder to escape liability by doing even less. Under title 50, rule 1–2–1(b)(3) of the Indiana Administrative Code, Jewell only needed to file a 103–N to avoid tax liability. Jewell did not do either of these things. We know of no provision allowing one protection from tax liability merely because one's failure to file was in good faith.

■ Jewell asserts that *South Shore I* and *South Shore Marina v. Board of Tax* reported in the Indiana Register, Vol. 12, Num-

*Comm'rs* (1988), Ind.Tax, 527 N.E.2d 738, *aff'd*, (1989), Ind., 543 N.E.2d 644 [*South Shore II*], prevent the Board from assessing the holder of stored property unless the conduct of the holder makes it impossible to assess the owner. Brief of Appellee at 15. In *South Shore I,* the marina refused to cooperate with the State Board's attempts to discover who owned the boats stored at the marina, and the Board assessed the marina for the value of the boats. The Court of Appeals held that once property is assessed to an individual, that person has the burden to establish he is not liable for the tax. 422 N.E.2d at 735. The court held that the Marina invited the error, and the Board's assessment was the natural consequence of the Marina's actions.

"Faced with Marina's refusal to supply the information, the Board was without alternative." *Id.* at 730. The court reinstated the Board's final assessment. *Id.* at 735.

The Court of Appeals' decision in *Empire Gas* reiterates the holding of *South Shore I,* stating: "Clearly, *South Shore* does not establish that assessing possessors of personal property is statutorily preferred over assessing the owners themselves. Only when the Board found it impossible to assess the owners did it assess the possessor." *Empire Gas,* 486 N.E.2d at 1041. The court further distinguished *Empire Gas* from *South Shore I,* pointing out that the identity of the owner of the LP gas tanks in *Empire Gas* was never in question. Jewell's business is more like the marina in *South Shore* in that both businesses involve the storage in one location of property belonging to several different people. However, Jewell's behavior can be distinguished from the marina's in that Jewell did cooperate with the Board and supplied the information required.

The tax court spoke to this issue in *South Shore II.* The Tax Court concluded that since the marina failed to provide the hearing officer with the information needed to correlate particular boats with their ber 4, p. 848, Jan. 1, 1989.

owners, the hearing officer had no alternative but to make a summary assessment of the boats to the apparent owner, South Shore. *South Shore II,* 527 N.E.2d at 742. The Tax Court stated that the Board's assessment was not arbitrary and capricious because the marina did not present evidence of nonliability sufficient to allow the Board to determine the true owner. *Id.* at 743.

The notion that *South Shore* imposes a minimum threshold of non-cooperation is erroneous. The *South Shore* cases do nothing to restrict the Board's use of Ind. Code § 6–1.1–2–4; they merely affirm the Board's decision to assess the holder.

Jewell would also have us believe that the Board refused to accept from Jewell in November of the assessment year what it would have accepted from South Shore Marina in December of the assessment year. Jewell argues that there is no justification for this arbitrary change of position. Brief of Appellee at 11. We view this assertion by Jewell as mere speculation about what the Board might have done if *South Shore* had been decided under different circumstances.[3] It was not.

This argument essentially asks the court to hold that a taxpayer's cooperation, which does not even amount to substantial compliance,[4] alters the Board's ability to collect on a lawfully made assessment. In light of the fact that all taxpayers are expected to cooperate, Jewell's cooperation does not make the Board's revised assessment arbitrary.

### B. *Amount of the Assessment*

■ Jewell acknowledges that the State Board used the information provided by Jewell to cross-check for the owners that correctly reported their grain, but did not

use the information to assess the owners who did not properly report their grain. Brief of Appellee at 13. The statute indicates where personal property should be reported:

> Personal property shall be assessed at the place where it is situated on the assessment date of the year for which the assessment is made if the property is:
>
> (1) regularly used or permanently located where it is situated; or
>
> (2) owned by a nonresident who does not have a principal office within this state.

Ind.Code § 6–1.1–3–1(c)(West 1989). This principle has survived many incarnations. Indiana taxation principles have long followed the theory that "personal property of non-residents of this State, having the protection of our laws, must bear its fair share of the burdens of taxation." 1891–92 Op.Att'y Gen. 41, 42 (1891). As early as 1896 this Court wrote of the wisdom of requiring personal property used in business in Indiana to be assessed here even though the owner may reside elsewhere. Otherwise, the Court mused:

> The property owner, to be sure, may have certain occasional twinges of conscience,—that he is sponging off the community, that he is receiving the benefits of the laws for the protection of his property, that the courts are open to him ... that all his personal property and business interests are as carefully guarded as if he were "a citizen of and domiciled in" the state; but that all these things are done for him at the expense of his neighbors, the citizens of the state, who pay their taxes regularly from year to year. Those twinges of conscience

---

3. Jewell bases this claim on the fact that in December the Board sent Marina a letter which allowed Marina additional time to produce a list of the boat owners. However, the same letter stated "Since you did not do this [send a list of the owners] we have no alternative other than to assess this property to your company." *South Shore I,* 422 N.E.2d at 728. The fact that the Board asked for the list again in December does not prove the Board would not have increased the assessment if the list had been provided at that time. The Board may have wanted

to check the list for boats that had been paid for on the owner's return. Accepting Jewell's argument on this point would require too much speculation on our part.

4. Under the administrative rules substantial compliance occurs when the value of any property that was omitted from the return is less than 5% of the total assessed value of reported property. Ind.Admin.Code tit. 50, r. 4.1–1–15(B) (1988).

will, however, grow more dulled from year to year, and finally, perhaps cease altogether; and, in time, if he perseveres, he will come to regard it as his sacred right to bring all his ... business, without being at all hampered by local or state taxes, at the same time that he enjoys all the rights, privileges and protection of citizenship.

*Buck v. Miller* (1897), 147 Ind. 586, 594–95, 47 N.E. 8, 9. While this discussion focuses on the evils of nonpayment by out-of-state owners of goods located within the state, it is easy to apply the same rational at the intrastate level. Indeed subsequent provisions specifically required all goods and chattels situated in "some township, town or city other than where the owner resides" be assessed in the "township, town or city where situated." 1929–30 Op.Att'y Gen. 598 (1930).

Another point of logic that we perceive in this chain of authority is that the assessor in the place where the goods are located stands the best chance of discovering goods which have not been properly reported. In other words, the goods are most easily found where they are in fact stored. Since it is clear that the grain owners who stored grain in Jewell's elevators should have filed returns in Steuben Township, we see no reason why the Board should be required to search for improperly filed returns.

■ Jewell asserts the State may reap double taxes unless Jewell is exempt from paying taxes on goods owned by farmers who paid in other townships. This argument would be persuasive if double taxation was considered *per se* unlawful. It is not. When the purpose of a taxing act is plain, courts will not interfere. It is not permissible to ignore the words of the statute in order to avoid double taxation. *Aluminum Co. of America v. United States*, 67 F.2d 172, 175 (3d Cir.1933), *cert. denied*, 291 U.S. 666, 54 S.Ct. 441, 78 L.Ed. 1057 (1934). *See also Estate of Renick v. United States*, 687 F.2d 371, 374, 231 Ct.Cl. 457 (1982).

We would not, however, expect Jewell to repay taxes on grain that it can prove has been assessed. *See Nyce v. Schmoll* (1907), 40 Ind.App. 555, 82 N.E. 539 (securities owner lived in one county, agent with possession and control of the securities lived in another county; owner who informed city treasurer that taxes on the securities had been assessed to and paid by agent, could not be required to pay the taxes again himself). Except for amounts Jewell proves were paid by owners, we order reinstatement of the State Board's assessment.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.