**INDIANA ALCOHOLIC BEVERAGE COMMISSION, Appellant–Respondent**

v.

**Mary N. DOWLAND, Horace Dowland, Brian Dowland, and Kimberly A. Dowland, d/b/a Dowland's Pub, Appellees–Petitioners.**

No. 19A05–9105–CV–144.

Court of Appeals of Indiana, Fifth District.

Nov. 13, 1991.

Rehearing Denied Dec. 17, 1991.

Linley E. Pearson, Atty. Gen., Michael A. Schoening, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellant-respondent.

Jack R. Robinson, Rockport, for appellees-petitioners.

BARTEAU, Judge.

The Indiana Alcoholic Beverage Commission ("Commission") appeals the judgment of the trial court reversing the Commission's decision divesting Brian Dowland of his interest in Dowland's Pub, imposing a $3,000.00 fine on Dowland's Pub and suspending the Pub's permit for 15 days. The Commission raises the issue whether the trial court erred in determining the evidence was insufficient to support the Commission's decision.

We reverse.

### FACTS

Mary, Horace, Kimberly and Brian Dowland are partners doing business as Dowland's Pub. After receiving complaints about drug-dealing in Dowland's Pub and other bars in Spencer County, the Indiana

State Police began an investigation. With the aid of a confidential informant (identified at trial as Edward Roberts), State Trooper Mark Sanders bought "crank" (methamphetamine) from Edward Rumage on several occasions at Rumage's residence. Rumage was a bartender at Dowland's Pub. On one occasion, Sanders and the informant met at Dowland's Pub to discuss a cocaine transaction with Rumage, who was bartending that evening. About a week later, the informant, at Sander's request, called Dowland's Pub to discuss a purchase of cocaine with Rumage. Brian Dowland answered the phone and the informant asked him if any "coke" was available. Dowland responded, "No, but you can talk to Eddie." Later that evening, Sanders and the informant met at Dowland's Pub. Rumage was bartending and Dowland was also working behind the bar. Rumage, the informant and Sanders went into the men's restroom and Sanders bought crank from Rumage.

About a month later, on July 6, 1990, Sanders and the informant were again in Dowland's Pub. Sue Gokenbach joined them and offered to sell them some "yellow jackets," a prescription drug that was "better than street speed." She told them that she usually sold them to Dowland, but because he was not there she would sell them to Sanders and the informant. She also told them not to tell Dowland that she was selling the drugs to them for $3.00 a pill because she usually charged Dowland a higher price. Gokenbach, Sanders and the informant went into the women's restroom. Gokenbach took a brown Rockport Pharmacy prescription bottle out of her purse and showed it to Sanders. She emptied the contents of the bottle into her hand and told them that she wanted to hold three back for Dowland. She put three back into the bottle and put the bottle in her purse. Sanders bought the remaining fifteen. The pills given to Sanders were tested and found to contain phentermine, a schedule IV substance.

Shortly after, while Gokenbach, Sanders and the informant were sitting at a table in the pub, Dowland came in and went behind the bar. Gokenbach called him over and gave him the three remaining pills from the prescription bottle. Sanders testified that the pills looked exactly like the ones he had been given and that the prescription bottle was the same one he had looked at in the women's restroom.

Sanders and the informant left Dowland's pub but later returned around midnight. Rumage called Sanders into the men's restroom, pulled out a plastic bag of a green leafy substance, told Sanders that this was the same stuff that Ron Newton sells for $50.00 a quarter ounce and that Rumage wanted to sell to Sanders. Rumage then rolled a "joint" with the substance and gave it to Sanders. The substance in the joint was later tested and found to be marijuana. Rumage then went back to tending bar and Sanders returned to his seat. A few minutes later Sanders saw Rumage smoking a marijuana cigarette and passing it to Ron Newton, Dowland and another man standing at the end of the bar. Sanders recognized it as marijuana from its distinctive odor, the way the cigarette was rolled and the men's behavior with the cigarette in passing it back and forth.

A couple of days later Sanders was in Dowland's pub and Dowland asked him if he had gotten any marijuana. Sanders told him that he had not, but had gotten speed. Dowland then responded, "Oh, you got some of those yellow jackets?" Dowland also advised Sanders that Eddie (the informant) was coming on too strong and the drug dealers were getting frightened.

Based on the above evidence, the Commission found that on July 6, 1990 Dowland knowingly possessed, allowed to be used and allowed delivery of controlled substances on the permit premises and suspended the pub's permit for fifteen days, fined the pub $3,000.00 and ordered Dowland to divest himself of any interest in the partnership doing business as Dowland's Pub. Dowland petitioned for judicial review and the trial court found that substantial evidence did not support the Commission's determination. The Commission appeals this judgment.

## DISCUSSION

Judicial review, both at the trial and appellate court levels, of an administrative agency's decision is limited to whether the decision is arbitrary, capricious, an abuse of discretion, in excess of statutory authority, or unsupported by substantial evidence. Ind.Code 4-21.5-5-14; *Board of Tax Com'rs v. Jewell Grain Co.* (1990), Ind., 556 N.E.2d 920. Here, the trial court determined that the Commission's decision was unsupported by substantial evidence because the actual pills given to Dowland and the alleged marijuana cigarette he was seen smoking had not been tested to determine if they were in fact controlled substances and that the opinion evidence from Sanders was not substantial evidence.

■ The Commission argues that a witness may give opinion testimony on an ultimate question of fact and that specifically a non-expert witness may testify about the identity of a controlled substance. Keeping in mind that neither the trial court nor we may reweigh the evidence or judge the credibility of the witnesses, we agree with the Commission that substantial evidence supports its determination.

■ Lay witnesses may testify to identify drugs based upon the witness' personal experience. *Moon v. State* (1990), Ind. App., 560 N.E.2d 76. With regard to the marijuana Dowland and the others were using, Sanders testified that he recognized the smell of marijuana and that the way the cigarette was rolled and the way the men passed it back and forth was consistent with a marijuana joint. This testimony is substantial evidence that Dowland unlawfully allowed the use of a controlled substance on the permit premises. The Commission was not required to reach the conclusion that the substance was marijuana, but the evidence does support that inference.

■ With regard to the three phentermine pills given to Dowland, we need not discuss lay opinion testimony. No one testified that those three pills were phenter-

mine. The evidence is that those three pills came from the same prescription bottle which contained the pills given to Sanders. All of the pills looked the same. They had all been poured into Gokenbach's hand and then three had been put back in the bottle. Not long thereafter, Gokenbach gave those same three pills to Dowland. The pills given to Sanders were tested and contained phentermine, a controlled substance. This is substantial evidence from which the Commission could infer that the three pills given to Dowland also contained phentermine and that Dowland knowingly possessed, without a valid prescription, a controlled substance on the permit premises. This same evidence, coupled with the evidence of the conversation Sanders had with Dowland, also supports the Commission finding that Dowland knowingly allowed Gokenbach to unlawfully deliver a controlled substance on the permit premises.

The Commission's decision is supported by substantial evidence. The trial court erred in its judgment to the contrary.

REVERSED.

SHARPNACK and HOFFMAN, JJ. concur.